# EXHIBIT B

EFILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

# General Civil and Domestic Relations Case Filing Information Form

☐ Superior or ☑ State Court of GWINNETT County

**For Clerk Use Only**

**Date Filed** ____________ **MM-DD-YYYY**

**Case Number** 26-C-09759-S5

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| ROSARIO | CECIL | L | | |
| ROSARIO | RAFAEL | A | | |
| | | | | |
| | | | | |

**Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| TIKTOK, LLC | | | | |
| TIKTOK, INC. | | | | |
| TIKTOK PTE. LTD. | | | | |
| TIKTOK LTD. | | | | |

*** SEE LIST OF ADDITIONAL DEFENDANTS ATTACHED**

**Plaintiff's Attorney** DARREN W. PENN **State Bar Number** 571322 **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☑ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

____________ **Case Number** ____________ **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

____________ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

***ADDITIONAL DEFENDANTS***

- ByteDance, Inc.
- ByteDance Ltd.
- TikTok USDS Joint Venture LLC
- Instagram, LLC
- Meta Platforms, Inc.
- Avery Spriggs, M.A., LCMHC, LPC
- Healing at Water's Edge LLC
- Adrian Janit, Ph.D.
- Adrian Janit Psychological Services, LLC

EFILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

**General Civil and Domestic Relations Case Filing Information Form**

☐ **Superior or** ☒ **State Court of** Gwinnett State Court **County**

**For Clerk Use Only**

**Date Filed** ____________________ **Case Number** 26-C-09759-S5
**MM-DD-YYYY**

| **Plaintiff(s)** | **Defendant(s)** |
|---|---|
| Cecil L Rosario | TikTok, Inc. |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| Rafael A Rosario | TikTok, LLC |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| Estate of Fabiana Angelyz Rosario, deceased | TikTok Pte. Ltd. |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |
| | TikTok Ltd. |
| Last First Middle I. Suffix Prefix | Last First Middle I. Suffix Prefix |

**Plaintiff's Attorney** Darren W Penn **State Bar Number** ____________ **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☐ **Contract**
- ☐ **Garnishment**
- ☒ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

____________________ ____________________
**Case Number** **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

____________________ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**COMPLAINT FOR WRONGFUL DEATH AND DEMAND FOR JURY TRIAL**

Plaintiffs Cecil L. Rosario and Rafael A. Rosario, individually as the surviving parents of Fabiana Angelyz Rosario Echevarria, and Cecil L. Rosario as Administrator of the Estate of Fabiana Angelyz Rosario Echevarria, file this Complaint and show the Court as follows:

## I. NATURE OF THIS ACTION

1. Fabiana Angelyz Rosario Echevarria ("Fabiana") died by suicide at her home in Columbia County, Georgia, at approximately 10:55 p.m. on September 3, 2024. She was thirteen years old.

2. This Complaint concerns two groups of Defendants who contributed to Fabiana's death. The first group designed, distributed, and profited from two social media products, TikTok and Instagram, that Fabiana began using at about age eleven. Those Defendants engineered their products to produce compulsive use by children, learned from their own research that compulsive use by adolescents produces anxiety, depression, sleep loss, and self-harm, and represented the products to the public as safe.

3. The second group consists of the licensed mental health professionals who undertook to assess, treat, and manage the very risk that took Fabiana's life. Defendant Avery Spriggs treated Fabiana across thirty-eight counseling encounters and documented at intake that Fabiana had experienced suicidal thoughts since about age eight and cut herself with a razor or knife as often as every one to two days. Defendant Adrian Janit evaluated Fabiana in early 2024 and learned that she had considered a plan to end her life and refused to describe it. Neither professional performed and documented a structured suicide-risk assessment, secured the means Fabiana had already identified, engaged her caregivers with the specificity the disclosures demanded, or escalated her care. Fabiana died hours after her final session with Spriggs.

4. Georgia law treats suicide as an intervening cause in ordinary negligence cases. Georgia law recognizes two exceptions: where the defendant owed the decedent an unusual duty to protect her from self-harm, and where the defendant's wrongful conduct produced a rage, frenzy, or uncontrollable impulse. The facts pleaded below fit both. The mental health Defendants stood in the professional relationships that Georgia courts recognize as carrying the unusual duty to prevent a patient's suicide. The social media Defendants undertook, in their public representations and in the architecture of their products, to protect minor users from the very harm that occurred, held real-time usage data showing her escalating, round-the-clock use in the final days of her life, and operated on her mind through the final hours of her life.

5. Fabiana also suffered injuries in life that do not depend on the cause of her death: addiction, severe anxiety, severe depression, recurrent self-harm, disrupted sleep, and the loss of relationships at home and at school. The Estate's claims for those injuries stand on their own.

6. The claims against the social media Defendants arise from the design, distribution, and marketing of their own products, and from their own statements about those products, not from any content created by a third party. Plaintiffs do not ask this Court to require any Defendant to remove, alter, review, or moderate any content. Every design change alleged below could have been made without touching a single third-party post.

7. Plaintiffs seek the full value of Fabiana's life, the damages her Estate may recover under Georgia law, punitive damages against the social media Defendants, and the expenses of this litigation.

## II. PARTIES

### A. Plaintiffs

8. Plaintiff Cecil L. Rosario, Fabiana's mother, resides in Columbia County, Georgia. She brings the wrongful death claim jointly with Fabiana's father under O.C.G.A. § 19-7-1(c). She also brings the Estate's claims under O.C.G.A. §§ 9-2-41 and 51-4-5(b) as the anticipated Administrator of the Estate of Fabiana Angelyz Rosario Echevarria. Cecil L. Rosario has petitioned the Probate Court of Columbia County for letters of administration, and Fabiana's heirs unanimously consent to her appointment.

9. Plaintiff Rafael A. Rosario, Fabiana's father, resides in Columbia County, Georgia. He brings the wrongful death claim jointly with Fabiana's mother under O.C.G.A. § 19-7-1(c).

10. Fabiana, born in 2011, died unmarried and without children. Under O.C.G.A. § 19-7-1(c)(2), the right to recover the full value of her life vests in her parents, Cecil L. Rosario and Rafael A. Rosario (together, the "Parents").

### B. TikTok Defendants

11. Defendant TikTok Inc., a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230, holds a registration with the Georgia Secretary of State as a foreign profit corporation

authorized to transact business in Georgia (Control Number 21155002) and may be served through its Georgia registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. TikTok Inc. develops, provides, and supports the TikTok product in the United States, employs the United States personnel responsible for its design, trust-and-safety, and marketing functions, and derives substantial revenue from Georgia users and Georgia advertisers.

12. Defendant TikTok LLC, a Delaware limited liability company, may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. TikTok LLC owns and operates the TikTok product in the United States and derives substantial revenue from Georgia users and Georgia advertisers.

13. Defendant TikTok Pte. Ltd., a Singapore private limited company with its registered address at 1 Raffles Quay, #26-10, South Tower, Singapore 048583, may be served at that address under the Hague Service Convention. TikTok Pte. Ltd. distributes the TikTok product in the United States through the Apple App Store and the Google Play Store and appears as the developer of the TikTok product in the Google Play Store. TikTok Pte. Ltd. placed the copy of TikTok that Fabiana used into the stream of commerce in Georgia.

14. Defendant TikTok Ltd., a Cayman Islands company, may be served through its agents and subsidiaries TikTok Pte. Ltd. and TikTok Inc. TikTok Ltd. owns TikTok LLC and TikTok Pte. Ltd., appears as the developer of the TikTok

product in the Apple App Store, and holds the registration for the tiktok.com domain. TikTok Ltd. controls the design and distribution of the TikTok product in the United States, including Georgia.

15. Defendant ByteDance Inc., a Delaware corporation with its principal office at 1199 Coleman Avenue, San Jose, California 95110, holds a registration with the Georgia Secretary of State as a foreign profit corporation authorized to transact business in Georgia (Control Number 21156473) and may be served through its Georgia registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. ByteDance Inc. shares responsibility with TikTok Inc. for developing, providing, and supporting the TikTok product in the United States, including the recommendation system at the center of this case.

16. Defendant ByteDance Ltd., a Cayman Islands company with its registered address at P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman KY1-1104, Cayman Islands, may be served at that address under the Hague Service Convention or through its subsidiaries TikTok Inc. and ByteDance Inc. ByteDance Ltd. owns ByteDance Inc. and TikTok Ltd., developed and owns the recommendation algorithm that drives the TikTok product, and provides legal, safety, and privacy resources to the TikTok product through a shared-services model. ByteDance Ltd. directed the design of the product that reached Fabiana in Georgia and derives substantial revenue from Georgia.

17. Defendant TikTok USDS Joint Venture LLC, a Delaware limited liability company headquartered in Culver City, California, may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, in January 2026 TikTok USDS Joint Venture LLC assumed operation of the TikTok product in the United States, including its United States user data, its recommendation system licensed from ByteDance Ltd., and its trust-and-safety functions, and it continues to distribute the TikTok product in Georgia. Upon information and belief, TikTok USDS Joint Venture LLC expressly or impliedly assumed the liabilities of the United States TikTok business, operates as a continuation of that business with substantially the same product, personnel, and user base, and possesses the account data, recommendation logs, and internal research concerning Fabiana's use that this case will require.

18. Defendants TikTok Inc., TikTok LLC, TikTok Pte. Ltd., TikTok Ltd., ByteDance Inc., ByteDance Ltd., and TikTok USDS Joint Venture LLC (together, "TikTok Defendants") designed, developed, distributed, marketed, and operated the TikTok product as a single integrated enterprise. Each TikTok Defendant acted as the agent of the others with respect to the design, distribution, and marketing of the TikTok product, shared officers, personnel, and resources, and disregarded corporate separateness in operating the product, such that the acts and omissions of each may be attributed to all. Each TikTok Defendant also bears liability for its own acts and omissions described below.

**C. Instagram Defendants**

19. Defendant Meta Platforms, Inc. ("Meta"), a Delaware corporation with its principal place of business at 1 Meta Way, Menlo Park, California 94025, holds a registration with the Georgia Secretary of State as a foreign profit corporation authorized to transact business in Georgia (Control Number 16037201) and may be served through its Georgia registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Gwinnett County, Georgia 30092. Meta owns and operates the Instagram product, employs the personnel who design it, sets its engagement and safety policies, and derives substantial revenue from Georgia users and Georgia advertisers.

20. Defendant Instagram, LLC, a Delaware limited liability company wholly owned by Meta as its sole member, may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Instagram, LLC owns and operates the Instagram product and derives substantial revenue from Georgia users and Georgia advertisers.

21. Defendants Meta and Instagram, LLC (together, "Instagram Defendants") designed, developed, distributed, marketed, and operated the Instagram product as a single integrated enterprise. Instagram, LLC acted at all relevant times as the agent and alter ego of Meta, and Meta directed and controlled the design decisions described below. Each Instagram Defendant bears liability for its own acts and omissions and, under principles of agency, joint venture, and alter ego, for the acts and omissions of the other.

**D. Mental Health Defendants**

22. Defendant Avery Spriggs, M.A., LCMHC, LPC ("Spriggs"), a professional counselor licensed by the State of Georgia under license number LPC012465, rendered outpatient mental-health counseling to Fabiana through Healing at Water's Edge, LLC from September 23, 2023, through September 3, 2024. Spriggs resides in South Carolina and may be served at 336 Clarine Drive, Goose Creek, South Carolina 29445, at her office at 3030 Ashley Town Center Drive, Suite 203B, Charleston, South Carolina 29414, or wherever she may be found, under O.C.G.A. §§ 9-10-91 and 9-10-94.

23. Defendant Healing at Water's Edge, LLC ("HWE"), a South Carolina limited liability company registered to transact business in Georgia under Georgia control number 21220936, may be served through its registered agent, Northwest Registered Agent Service, Inc., 8735 Dunwoody Place, Suite N, Atlanta, Fulton County, Georgia 30350. HWE employed Spriggs, billed for the counseling services Spriggs rendered to Fabiana, and held Spriggs out as the professional counselor rendering those services on its behalf.

24. At all relevant times, Spriggs acted as HWE's employee and actual or apparent agent, within the course and scope of the professional services HWE undertook to provide to Fabiana.

25. Defendant Adrian Janit, Ph.D. ("Janit"), a psychologist licensed by the State of Georgia under license number PSY003347, performed and directed Fabiana's psychological evaluation and related professional services through Adrian Janit

Psychological Services, L.L.C. Janit may be served at 211 Pleasant Home Road, Suite G1, Augusta, Richmond County, Georgia 30907, or wherever he may be found.

26. Defendant Adrian Janit Psychological Services, L.L.C. ("Janit Services"), a Georgia limited liability company with Georgia control number 10017121, may be served through its registered agent, Donsbach Lewis LLC, 504 Blackburn Drive, Martinez, Columbia County, Georgia 30907. Janit Services billed for the professional services rendered to Fabiana and held Janit out as the psychologist rendering those services on its behalf.

27. At all relevant times, Janit acted as Janit Services's member, employee, or actual or apparent agent, within the course and scope of the professional services Janit Services undertook to provide to Fabiana.

28. This Complaint refers to Spriggs, HWE, Janit, and Janit Services together as the "Mental Health Defendants."

**E. Fictitious Defendants**

29. Plaintiffs cannot presently ascertain the identities of Defendants John Does 1 through 10, individuals who participated in the design, operation, marketing, or safety functions of the TikTok or Instagram products, or in Fabiana's mental health care, and whose acts and omissions contributed to her injuries and death. Plaintiffs will amend this Complaint to name them when their identities become known.

30. Plaintiffs cannot presently ascertain the identities of Defendants ABC Corporations 1 through 10, entities that participated in the design, operation, marketing, or safety functions of the TikTok or Instagram products, or in Fabiana's

mental health care, and whose acts and omissions contributed to her injuries and death. Plaintiffs will amend this Complaint to name them when their identities become known.

## III. JURISDICTION AND VENUE

31. This Court has subject-matter jurisdiction over this civil action under O.C.G.A. § 15-7-4.

### A. Personal Jurisdiction Over TikTok Defendants

32. This Court has personal jurisdiction over each TikTok Defendant under O.C.G.A. § 9-10-91(1), (2), and (3) and the Due Process Clause of the Fourteenth Amendment.

33. TikTok Defendants transact business in Georgia. TikTok Inc. and ByteDance Inc. have registered with the Georgia Secretary of State to transact business in Georgia and maintain registered agents in Gwinnett County. TikTok Defendants distribute the TikTok product to millions of Georgia residents, enter into terms-of-service agreements with Georgia residents, including Fabiana, that govern the use of the product, collect and monetize the personal data of Georgia users, and sell advertising placements targeted to Georgia users by geography.

34. According to TikTok Defendants' own "Georgia fact sheet," approximately 300,000 Georgia businesses use TikTok, 24 percent of Georgia small and mid-sized businesses on the platform call TikTok "critical to their business," 210,000 Georgia jobs "benefited from a TikTok business account in 2024," and Georgia small and mid-sized businesses' advertising on TikTok contributed approximately $750 million to Georgia's gross domestic product in 2023. Upon

information and belief, approximately 5.4 million Georgia adults use TikTok, and Georgia ranks among the top states in the nation by user engagement.

35. TikTok Defendants committed tortious acts and omissions in Georgia, and tortious injury occurred in Georgia. They designed the TikTok product, delivered it to Fabiana's device in Columbia County, Georgia, operated its recommendation system on her account while she sat in her Georgia home, sent push notifications to her Georgia device, and directed to Georgia the misrepresentations described below. Fabiana's addiction, deterioration, and death all occurred in Georgia.

36. TikTok Defendants purposefully direct the TikTok product at Georgia through geography-based content distribution, regional advertising tools, and location-aware features, and they regularly solicit business and derive substantial revenue from goods used and services rendered in Georgia. Plaintiffs' claims arise from and relate to those Georgia contacts.

**B. Personal Jurisdiction Over Instagram Defendants**

37. This Court has personal jurisdiction over each Instagram Defendant under O.C.G.A. § 9-10-91(1), (2), and (3) and the Due Process Clause of the Fourteenth Amendment.

38. Instagram Defendants transact business in Georgia. Meta has registered with the Georgia Secretary of State to transact business in Georgia and maintains a registered agent in Gwinnett County. Instagram Defendants distribute the Instagram product to millions of Georgia residents, enter into terms-of-use agreements with Georgia residents, collect and monetize the personal data of Georgia users, and sell advertising targeted to Georgia users by geography. According to the

Pew Research Center, approximately 61 percent of United States teenagers ages thirteen to seventeen used Instagram in 2024. Upon information and belief, hundreds of thousands of Georgia minors used Instagram in 2024, and Instagram Defendants derived substantial revenue from Georgia in each year relevant to this action.

39. Instagram Defendants committed tortious acts and omissions in Georgia, and tortious injury occurred in Georgia. They designed the Instagram product, delivered it to Fabiana's device in Columbia County, Georgia, operated its recommendation and notification systems on her account while she sat in her Georgia home, and directed to Georgia the misrepresentations described below.

40. Instagram Defendants purposefully direct the Instagram product at Georgia through geography-based content distribution, regional advertising tools, and location-aware features, and they regularly solicit business and derive substantial revenue from goods used and services rendered in Georgia. Plaintiffs' claims arise from and relate to those Georgia contacts.

**C. Personal Jurisdiction Over Mental Health Defendants**

41. This Court has personal jurisdiction over Janit and Janit Services, both Georgia residents who rendered the professional services at issue in Georgia.

42. This Court has personal jurisdiction over Spriggs and HWE under O.C.G.A. § 9-10-91(1), (2), and (3). HWE registered to transact business in Georgia and maintains a registered agent in this State. Spriggs holds a Georgia professional counselor license and, through HWE, undertook and rendered professional counseling services to a Georgia minor who received those services in Georgia. The

acts and omissions alleged against Spriggs and HWE caused injury and death in Georgia, and Plaintiffs' claims arise from those Georgia contacts.

**D. Venue**

43. Venue lies in this Court as to TikTok Inc., ByteDance Inc., and Meta under O.C.G.A. § 14-2-510(b)(1). Each is a foreign corporation authorized to transact business in Georgia, each maintains its registered office in Gwinnett County, and each therefore resides in Gwinnett County for venue purposes.

44. Venue lies in this Court as to every other Defendant under Article VI, Section II, Paragraph IV of the Georgia Constitution because Plaintiffs sue all Defendants as joint tortfeasors whose acts and omissions combined to produce a single indivisible injury, Fabiana's deterioration and death, and because venue lies in this county as to TikTok Inc., ByteDance Inc., and Meta.

45. Venue also lies in this Court as to the nonresident Defendants under O.C.G.A. § 9-10-93 because they may be sued in the county in which a resident joint tortfeasor is properly sued.

## IV. COMPLIANCE WITH O.C.G.A. § 9-11-9.1

46. This action asserts claims of professional negligence against a licensed professional counselor and a licensed psychologist, professions listed in O.C.G.A. § 9-11-9.1(g)(20) and (22), and against the entities through which they practiced.

47. Plaintiffs file with this Complaint, as Exhibit A, the affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, a licensed professional counselor competent to

testify, which sets forth specifically the negligent acts and omissions of Spriggs and HWE and the factual basis for each.

48. Plaintiffs file with this Complaint, as Exhibit B, the affidavit of Zachary K. Blumkin, Psy.D., ABPP, a licensed and board-certified clinical psychologist competent to testify, which sets forth specifically the negligent acts and omissions of Janit and the factual basis for each.

49. Plaintiffs incorporate each affidavit by reference as though fully set forth herein.

## V. FACTUAL ALLEGATIONS

### A. Fabiana

50. Fabiana lived with her Parents in Columbia County, Georgia. She attended school there, and she loved her family.

51. Fabiana created TikTok and Instagram accounts at approximately age eleven, in or about 2022. TikTok Defendants and Instagram Defendants each state publicly that a user must be at least thirteen to hold a standard account. Neither verified Fabiana's age, and each gave her full access to the standard product.

52. Fabiana's use of TikTok and Instagram escalated steadily. Upon information and belief, and as the account data in Defendants' possession will show, by age twelve she used the products daily and for extended periods, and she returned to them compulsively.

53. At twelve, Fabiana began to show increasing symptoms of anxiety and depression. Her behavior at home and at school deteriorated, and her relationships with family and peers suffered.

54. The Parents talked with Fabiana, restricted her technology use, and applied ordinary discipline. Those efforts did not work. Upon information and belief, TikTok and Instagram continued to draw Fabiana back with notifications and to reward her return with a personalized feed designed to hold her attention.

55. The Parents then sought professional help. They placed Fabiana in counseling with Spriggs through HWE in September 2023 and obtained a psychological evaluation from Janit through Janit Services in early 2024.

### B. TikTok and Instagram Are Products, and Plaintiffs' Claims Target Their Design

56. TikTok Defendants and Instagram Defendants design, code, engineer, test, assemble, and distribute TikTok and Instagram as software applications, in uniform copies, to hundreds of millions of consumers through the Apple App Store and the Google Play Store. Each copy occupies memory on the user's device, depletes its battery, can be turned on and off, and operates through physical swipes and taps. Neither Defendant group customizes its product for any individual consumer at the point of distribution.

57. TikTok Defendants and Instagram Defendants refer to their applications as "products" in their public statements, their internal documents, and the titles of the employees who design them.

58. Users acquire TikTok and Instagram under standardized terms that they cannot negotiate. In exchange for the product, the user furnishes personal data and attention, which the Defendants sell to advertisers. The absence of a cash price does not alter the commercial character of the exchange: TikTok Defendants and

Instagram Defendants distribute their products to obtain consideration, and they receive it.

59. TikTok Defendants and Instagram Defendants occupy a position superior to that of any user with respect to knowledge of how their products work, the risks those products create for children, and the means of reducing those risks. No user, and no parent, can inspect the recommendation system, the notification engine, or the internal research before accepting the product.

60. Plaintiffs' claims arise from the way TikTok Defendants and Instagram Defendants designed, built, distributed, and marketed their own products, and from their own statements about those products. Plaintiffs do not seek to hold either group of Defendants liable as the publisher or speaker of any information provided by another person.

61. The design features alleged below operate on the user regardless of the content of any particular post: the intermittent delivery of reward, the infinite feed, autoplay, engagement-timed notifications, the display of public approval metrics, ephemeral content, appearance-altering filters, the absence of effective age verification, the absence of default protective limits for minors, and parental controls that the products themselves undermine. These features materially increased the risk of compulsive use, sleep disruption, anxiety, depression, and self-harm in a child regardless of the particular content displayed.

62. Plaintiffs do not ask that any Defendant remove, restrict, or review any third-party content. Each safer alternative design alleged below could be

implemented without altering, deleting, or modifying the content of a single third-party post or message.

63. Plaintiffs allege the operation of Defendants' recommendation systems, and what those systems delivered to Fabiana, as facts bearing on her exposure, on Defendants' notice and knowledge, on foreseeability, on causation, and on Defendants' conscious indifference. Liability on each Count below rests on the design features identified above and does not depend on requiring any Defendant to suppress, reorder, or remove any third-party speech.

### C. Defendants Knew That Adolescents Are Uniquely Vulnerable to Their Designs

64. The prefrontal cortex, which governs planning, impulse control, evaluation of risk, and regulation of emotional responses to social reward, matures later than any other region of the brain and remains immature through adolescence. The reward pathway, including the ventral striatum, develops earlier. Between roughly ages ten and twelve, dopamine receptors multiply in the ventral striatum, making social rewards more pleasurable and social attention more compelling to a child exactly at the age when Fabiana began using TikTok and Instagram.

65. Because of that developmental gap, children and adolescents have less capacity than adults to delay gratification, resist immediately pleasurable social rewards, regulate emotion, and disengage from a stimulus designed to hold their attention. Repeated dopamine spikes drive neuroadaptation, so that a child requires more of the stimulus to obtain the same reward and experiences anxiety, dysphoria, and irritability when the stimulus is withheld.

66. TikTok Defendants knew these facts. Their internal documents state that adolescents are "more easily persuaded, there is a large population of them on TikTok (~30% [of daily average users]), and they likely don't understand risks of unhealthy usage as well as older users[.]" Their internal documents state that the product "is particularly popular with younger users who are particularly sensitive to reinforcement in the form of social reward and have minimal ability to self-regulate effectively." Upon information and belief, their internal documents further state that "[m]inors do not have executive function to control their screen time, while young adults do."

67. Instagram Defendants knew these facts. Their internal research, described below, documented that adolescent users compare themselves to others, feel worse about themselves because of what they see on Instagram, and cannot moderate their own use. Their internal research also found that adolescents with histories of other trauma, such as school bullying, succumb more readily to compulsive use of Instagram.

68. Both groups of Defendants designed their products with that knowledge and directed their products at that population.

### D. TikTok Defendants Designed TikTok to Capture Compulsive Use by Children and Knew the Consequences

69. ByteDance Ltd. released a Chinese-market version of the TikTok product in 2016 and launched TikTok internationally in September 2017. In August 2018, the year Fabiana turned seven, TikTok Defendants absorbed the short-form

video application Musical.ly, popular among American children, and transferred its United States accounts to TikTok.

70. TikTok Defendants earn revenue in proportion to the time users spend on the product, because time spent produces advertising impressions and data. The product's design, the work of thousands of engineers, pursues one central objective: to maximize time spent and sessions per day.

71. TikTok collects data on each user's demographics, viewing time, pauses, rewatches, "likes," comments, shares, searches, and messages, and builds from that data a personalized recommendation model for that user. The model selects and orders the videos delivered to the user's "For You" feed, an endless stream that the user advances by swiping.

72. Upon information and belief, TikTok Defendants determined internally that the recommendation system captures the average user, that is, produces habitual return, after approximately 260 videos, which a user can view in well under an hour.

73. TikTok Defendants designed the For You feed to deliver the videos the user will most enjoy only intermittently and at unpredictable intervals. That intermittent variable reward schedule, the same mechanism that makes slot machines addictive, drives dopamine release and habit formation. TikTok Defendants studied that mechanism and built the feed around it.

74. TikTok Defendants designed the feed to scroll infinitely, so that the user never reaches a natural stopping point, and to autoplay, so that the next video begins without any action by the user.

75. TikTok Defendants designed the product to send push notifications to the user's device at times calculated to draw the user back into the product, and, upon information and belief, optimized those notifications to "encourage users to open the App more and stay longer." Upon information and belief, TikTok Defendants' own data showed that in 2022 roughly one in five users aged thirteen to fifteen used TikTok between midnight and 5:00 a.m.

76. TikTok Defendants designed the product to display, on every post, the number of "likes," comments, and shares it has received, presenting children with a continuous public tally of social approval that drives social comparison and diminishes self-worth.

77. TikTok Defendants designed "stories" and livestreams to disappear after a limited period, exploiting a child's fear of missing out to drive frequent reopening of the product.

78. TikTok Defendants designed the product to obscure the device's clock during use, reducing the likelihood that the user will notice how much time has passed.

79. TikTok Defendants designed and distributed "beauty filters" that smooth skin, apply digital makeup, and reshape facial features. TikTok Defendants knew that such filters foster unrealistic beauty standards, body dissatisfaction, and

diminished self-esteem, particularly in adolescent girls. Upon information and belief, TikTok employees proposed an awareness message about filters and body image, and TikTok Defendants did not deploy it.

80. TikTok Defendants designed the recommendation system to amplify posts that generate strong engagement, which includes controversial, volatile, and distressing material, and to deliver more of any category of content with which the user has engaged, including content concerning depression, self-harm, and suicide. TikTok Defendants themselves describe the resulting pattern of use as "filter bubbles." Upon information and belief, TikTok Defendants' own 2020 safety review found that the product "can serve potentially harmful content expeditiously."

81. TikTok Defendants represent that a user must be at least thirteen to hold a standard account and at least eighteen to view age-restricted content, but they implemented no effective age verification. Upon information and belief, TikTok Defendants possessed technology capable of estimating a user's age with substantially greater accuracy than self-reported birthdate, declined to apply it to remove underage accounts, and, until at least May 2022, permitted users to bypass the age gate entirely by signing in through third-party accounts. The United States alleged in August 2024 that TikTok Defendants had for years knowingly maintained accounts of children under thirteen.

82. TikTok Defendants created a "Family Pairing" feature that permits a parent to link to a child's account and set content and time controls. TikTok Defendants also built into the product an unlink option that a child could use to sever

the pairing without effective notice to the parent. TikTok Defendants' employees acknowledged internally that the option "renders the [Family Pairing] feature kina useless" but is "not a bug."

83. The product does not notify a parent of a child's excessive use, late-night use, or contact with strangers, although the product records each of those events in real time.

84. TikTok Defendants designed the product so that a user who closes it returns to it with a single tap and without friction, and, upon information and belief, made deactivating or deleting an account materially more difficult than creating one.

85. On March 1, 2023, TikTok Defendants announced that every account belonging to a user under eighteen would automatically receive a sixty-minute daily screen-time limit and that users aged thirteen to fifteen would not receive push notifications after 9:00 p.m. TikTok Defendants designed the sixty-minute limit so that the child could dismiss it by entering a passcode of the child's own choosing and continue watching. TikTok Defendants knew that a limit a child can dismiss with a passcode does not limit a child's use, and, upon information and belief, their internal testing showed that such tools reduced use by a negligible amount while an internal document stated that "[o]ur goal is not to reduce the time spent."

86. TikTok Defendants knew what their design produced. Their internal documents state that "compulsive usage on TikTok is rampant and [their] users need better tools to understand their usage, manage it effectively, and ensure being on TikTok is time well spent[.]" Their internal documents state that "compulsive usage

correlates with a slew of negative mental health effects like loss of analytical skills, memory formation, contextual thinking, conversation depth, empathy, and increased anxiety" and interferes with "essential personal responsibilities like sufficient sleep, work/school responsibilities, and connecting with loved ones." Their internal documents describe the product's features as "coercive design tactics" that "limit[] user agency."

87. TikTok Defendants conducted experiments on minor users without the knowledge or consent of the users or their parents. In one such experiment, TikTok Defendants exposed one group of minors to a version of the product that enforced content policies and another group to a version that did not. After a sixteen-year-old in the unenforced group died by suicide, TikTok Defendants analyzed his account and found that 73 percent of the videos recommended to his For You feed concerned mental health struggles, suicide awareness, loneliness, and profound sadness, and that roughly one in ten violated TikTok's own policy against content that normalizes or promotes self-harm. TikTok Defendants reduced the size of the unenforced group and continued the experiment.

88. Upon information and belief, TikTok Defendants' own studies found that videos depicting self-harm accumulated more than 75,000 views before TikTok Defendants identified and removed them, and TikTok Defendants instructed moderators not to act on reports of underage users unless the account itself declared the user under thirteen.

89. TikTok Defendants never disclosed any of these findings to the public, to parents, or to Fabiana or the Parents.

90. Instead, TikTok Defendants told the public, including Fabiana and the Parents, in their published Community Guidelines that they "will remove any content—including video, audio, livestream, images, comments, links, or other text—that violates [TikTok] Community Guidelines" and that they "do not allow content that may put young people at risk of exploitation, or psychological, physical, or developmental harm."

91. TikTok Defendants told the public, through public relations campaigns and the testimony of their executives before Congress, that TikTok was not addictive, that it was safe for teenagers, and that its safety tools and parental controls protected minor users. Upon information and belief, in Senate testimony in October 2021, TikTok Defendants' representative told Congress that most teenagers on TikTok do not encounter videos concerning suicide, self-injury, or eating disorders and that TikTok effectively blocks and removes such content.

92. Each of those statements misrepresented what TikTok Defendants knew. TikTok Defendants made them to induce children to use the product and to induce parents to permit that use.

### E. Instagram Defendants Designed Instagram to Capture Compulsive Use by Children and Knew the Consequences

93. Instagram permits users to post, view, "like," comment on, and share photographs and short-form videos, including through its "Reels," "Explore," and "Stories" features.

94. Instagram Defendants earn revenue in proportion to the time users spend on the product. Instagram Defendants build for each user a personalized recommendation model designed to maximize the time that user spends scrolling and the number of times that user opens the product each day. On January 27, 2021, Instagram's Vice President of Product Management, Max Eulenstein, wrote to the Head of Instagram, Adam Mosseri: "No one wakes up thinking they want to maximize the number of times they open Instagram that day. But that's exactly what our product teams are trying to do."

95. Instagram Defendants designed the product with infinite scroll, autoplaying video, engagement-timed push notifications, visible public approval metrics, an intermittent variable reward schedule, appearance-altering filters, and disappearing content.

96. Instagram Defendants designed the product without effective age verification, without default protective limits on session length or nighttime use for minors, without parental notification of excessive or harmful use, and without labels identifying images altered by filters.

97. Instagram Defendants designed the product so that a user who closes it returns to it with a single tap and without friction, and, upon information and belief, made deactivating or deleting an account materially more difficult than creating one.

98. Instagram Defendants knew what their design produced. In 2020, Instagram Defendants acknowledged internally that "several experiments have demonstrated that women who were exposed to Instagram photos of attractive

models reported increased body dissatisfaction," that viewing filtered photographs increased body dissatisfaction, and that adolescent girls perceived altered images as equally representative of reality as unaltered images. Their own body-dissatisfaction research concluded that "some work concluded that the best thing to do is to reduce social media use and screen time."

99. Instagram Defendants found internally that users who spend more than three hours per day on Instagram "have lower positive affect and lower overall life satisfaction." In or about 2020, an Instagram employee agreed internally that it is "probably true" that "Social Media is addictive and people don't have the willpower to put down their phones."

100. In 2021, Arturo Béjar, then a senior engineering leader at Meta responsible for integrity and care, surveyed Instagram users aged thirteen to fifteen and found that, within the preceding seven days, 24.4 percent had received unwanted sexual advances, 26 percent had witnessed discrimination, 21 percent felt worse about themselves because of other people's posts, 21.8 percent had experienced bullying, and 30.4 percent had experienced a negative comparison. Béjar later testified that Meta employees "were not supposed to say 'addiction'" and used the euphemism "problematic use" instead, and that Meta defined "problematic use" so narrowly that "the company could say things like, 'oh, we've looked into problematic use and it's not an issue.'"

101. In 2022, Instagram Defendants found internally that "[t]eens have higher prevalences of violating content than Non-Teens . . . driven by Bullying . . . and SSI [suicide & self-injury.]"

102. In 2023, Instagram Defendants began "Project MYST," a confidential study of Meta youth and social-emotional trends. Before the study became public, Instagram Defendants wrote internally that they "don't recommend publicizing MYST, but if the study were to become public (proactively or reactively), it would be viewed as being endorsed by Meta and therefor should be designed to credibly advance . . . external-facing goals" of "[a]dvanc[ing] the credibility of research that finds small or null correlations between social media well-being and/or well-being relative to other factors," "[d]eflat[ing] conversations about research claiming causal connections between social media and mental health and well-being," "[m]ak[ing] the issue bigger than social media," and "[d]emonstrat[ing] that Meta is aligned with the interests of parents." While the study remained underway, Instagram Defendants recognized internally that it was "likely to find negative associations between teen mental health and social media" and would not "advance the narrative that Meta wants to move forward."

103. Through Project MYST, Instagram Defendants learned that adolescents with histories of other traumatic experiences, such as school bullying, succumb more readily to compulsive use of Instagram. Fabiana had been bullied at school and online.

104. Instagram Defendants never disclosed any of these findings to the public, to parents, or to Fabiana or the Parents.

105. Instead, Instagram Defendants told the public that the evidence did not show Instagram to be harmful. On January 31, 2024, before the Senate Committee on the Judiciary, Meta's chief executive, Mark Zuckerberg, testified regarding the link between social media and adolescent mental health that "the bulk of the scientific evidence does not support that." In February 2026, testifying in a Los Angeles trial, Mosseri denied that people can become clinically addicted to social media and characterized the phenomenon as "problematic use." Instagram Defendants continue to represent that they "create safety tools, settings, and features to ensure a safe experience for all."

106. Each of those statements misrepresented what Instagram Defendants knew. Instagram Defendants made them to induce children to use the product and to induce parents to permit that use.

**F. Safer Alternative Designs Were Feasible, Known, and Rejected**

107. At all relevant times, TikTok Defendants and Instagram Defendants possessed the technical ability, at nominal cost relative to their revenue, to design their products so that they did not capture compulsive use by children. Reasonable alternative designs available to each included:

(a) effective age verification at account creation, using the age-estimation technology each Defendant already possessed, so that children under thirteen could not obtain standard accounts;

(b) default protective settings for every account identified as belonging to a minor, including private accounts, restriction of direct messages and comments to approved contacts, and disabled discoverability by strangers;

(c) default limits on session length and daily use for minors that a child could not dismiss with a self-selected passcode, with parental authorization required to relax them;

(d) default suspension of the product, or of notifications, during school hours and overnight for minors;

(e) disabled autoplay and a natural stopping point in the feed for minors, such as a required pause after a defined number of videos or minutes;

(f) concealed "like" counts and other public approval metrics on minor accounts;

(g) labels on images altered by filters, and no appearance-altering filters for minors;

(h) parental controls that a child cannot silently disable, with notification to the parent of any attempt to disable them, of nighttime use, and of excessive use;

(i) friction on re-entry to the product after a minor's session ends, and account deactivation and deletion processes no more difficult than account creation; and

(j) accurate warnings to minors and their parents, at account creation and periodically thereafter, of the addictive design of the product and of the mental-health risks that each Defendant's own research had identified.

108. Each alternative operates on the product's architecture and defaults, not on the content of any post. Each would have reduced the risk of the injuries Fabiana suffered without impairing the product's utility as a means of sharing and viewing videos.

109. The Defendants themselves have since implemented several of these alternatives, which demonstrates their feasibility. On September 17, 2024, two weeks after Fabiana died, Instagram Defendants announced "Teen Accounts," under which every account held by a user under sixteen defaults to private, may be messaged only by people the user follows or is connected to, receives a notification to leave the product after sixty minutes each day, enters a "sleep mode" that mutes notifications from 10:00 p.m. to 7:00 a.m., and cannot be changed to less restrictive settings without a parent's permission. Instagram Defendants possessed each of those defaults throughout the period of Fabiana's use.

110. TikTok Defendants likewise possessed each of the controls described in their March 1, 2023 announcement, and, upon information and belief, offered a version of the product outside the United States that reduced the design risks to minors described above.

111. TikTok Defendants and Instagram Defendants rejected these alternatives because each reduces time spent, sessions per day, and revenue. Each Defendant chose engagement over the safety of children.

### G. Spriggs and HWE Undertook to Manage Fabiana's Suicide Risk and Failed to Do So

112. Spriggs began treating Fabiana, then twelve, on September 23, 2023. HWE's billing records reflect thirty-eight completed counseling encounters through September 3, 2024, the day Fabiana died.

113. At intake, Spriggs documented that Fabiana had experienced suicidal thoughts beginning at approximately age eight, after her grandmother died; that Fabiana had begun cutting herself in 2023, at times every one to two days, approximately three cuts per episode, with a razor or a knife, deeply enough to leave scars; and that Fabiana was suicidal while cutting. The intake also documented impulsivity and frequent thoughts of, or fixation with, death.

114. Despite that history, Spriggs classified Fabiana's risk at intake as "Low." The intake does not document a developmentally appropriate structured suicide-risk assessment, a reasoned distinction between suicidal behavior and nonsuicidal self-injury, the frequency, recency, or intent of Fabiana's suicidal thoughts, any plan or method, access to means, prior attempts, reasons for living, caregiver knowledge, or any rationale for continued routine outpatient care. It does not document any counseling directed to the razors and knives it had just identified.

115. On October 5, 2023, Fabiana scored 15 on the GAD-7, indicating severe anxiety; 20 on the PHQ-9, indicating severe depression; and 61 on the PCL-5,

indicating clinically significant trauma symptoms. On PHQ-9 item 9, Fabiana endorsed thoughts that she would be better off dead or of hurting herself on more than half the days. The instrument itself recorded that Fabiana had reported suicide or self-harm thoughts and advised further assessment of risk.

116. The produced record contains no contemporaneous note documenting what additional suicide inquiry Spriggs made in response to the October 2023 results, what risk she formulated, what she told Fabiana's Parents, what she did about the means Fabiana had identified, or why routine outpatient care remained appropriate.

117. Spriggs created a safety plan on November 30, 2023, more than two months after the intake identified suicidal ideation and recurrent cutting. The plan listed triggers, warning signs, coping activities, support contacts, and general crisis resources. It did not assign any responsibility to Fabiana's Parents, did not call for the removal or secure storage of razors, knives, medications, or other potentially lethal means, did not verify that any means had been restricted, and did not contain a patient-specific emergency-disposition decision.

118. A diagnosis and treatment plan dated March 21, 2024, listed post-traumatic stress disorder, oppositional defiant disorder, attention-deficit/hyperactivity disorder, and binge-eating disorder. It included self-harm and thoughts of death among its behavioral definitions and set a goal of reducing self-harm. It contained no distinct, measurable suicide-risk-management plan, and it neither diagnosed nor directly targeted the severe depression and severe anxiety that the standardized measures had documented.

119. On May 2, 2024, Fabiana's GAD-7 score rose to 17, her PHQ-9 score rose to 22, and her PCL-5 score rose to 63. Each remained in the severe or clinically significant range. PHQ-9 item 9 again reflected thoughts of death or self-harm.

120. The produced record contains no contemporaneous note documenting a suicide-risk assessment responsive to the May 2024 results, any communication with Fabiana's Parents, any lethal-means intervention, any review of the safety plan, or any reasoned level-of-care decision.

121. Spriggs treated Fabiana with EMDR, a trauma-focused therapy. Her own post-death discharge summary states that "several crisis situations" arose during attempted EMDR work, that the EMDR target plan remained incomplete, and that EMDR was discontinued. The produced record does not document an adequate course of dialectical behavior therapy, DBT-informed treatment, cognitive behavioral therapy directed to the severe mood and anxiety symptoms, structured family intervention, or any integrated plan for treating Fabiana's suicide risk.

122. In a written response dated February 22, 2026, Spriggs stated that she had chosen not to maintain progress or service notes for Fabiana and that she did not change that practice until 2025, after Fabiana's care had ended. As a result, the produced records do not contemporaneously document the content of the thirty-eight sessions, any serial suicide-risk assessment, changes in Fabiana's acute or chronic risk, communications with her Parents, means counseling, crisis interventions, coordination with other providers, or the clinical reasoning that supported continued outpatient treatment.

123. Several intake and screening records bearing completion dates in 2023 and 2024 remained unlocked and unsigned until February 21, 2026, seventeen months after Fabiana died.

124. Spriggs' discharge summary, created the morning after Fabiana died, states retrospectively that bullying led to a resurgence of suicidal ideation and self-harm; that regular risk assessments and safety planning occurred; and that Fabiana reported having a means and a plan but no intent to die. The summary does not identify the plan or the means, when Fabiana disclosed them, what questions Spriggs asked, what risk Spriggs formulated, whether Spriggs immediately informed a Parent, whether the means were removed or secured, what urgent intervention followed, or why routine outpatient treatment remained appropriate.

125. A reported suicide plan and reported access to means, in a child with severe depression and a history of cutting, required urgent and documented action. Fabiana's denial of intent did not remove that requirement.

126. The discharge summary states that Spriggs "advocated for" and sought outside services for Fabiana. The produced record does not identify those providers, any communication with them, their findings or recommendations, or how Spriggs integrated those services into Fabiana's risk management.

### H. Janit and Janit Services Learned That Fabiana Had Considered a Suicide Plan and Did Not Act on It

127. Fabiana's Parents obtained a psychological evaluation from Janit to clarify her diagnoses and to develop treatment recommendations. Janit conducted the initial evaluation on February 22, 2024, and testing followed on March 14 and March

21, 2024, under Janit's direction. A psychometrist, DeLesha Greene, administered portions of the testing within Janit's evaluation process.

128. Janit's report documented that Fabiana was attending therapy every other week; that her mother described a fixation with death; that Fabiana thought about death often; and that she had previously asked whether she would go to heaven if she killed herself. The report also documented peer bullying, racial or ethnic harassment, school-safety fears, loss of interest, family conflict, and a maternal family history of depression, bipolar disorder, anxiety, and substance misuse.

129. On March 21, 2024, Fabiana endorsed all but two MACI-II items pertaining to self-harm, suicidal ideation, and harming others. She reported prior self-harm and acknowledged that she had considered a plan to complete suicide. When told that information disclosed to the psychometrist would be shared with her mother, Fabiana refused to provide further information about her suicidal ideation, while denying that she would attempt to harm herself.

130. Janit's report states that Fabiana's mother was informed of these endorsements and was aware of prior self-harm. Janit needed to notify Fabiana's mother. That notification did not substitute for a comprehensive assessment of Fabiana's ideation, intent, plan details, means access, preparatory conduct, prior behavior, stressors, protective factors, self-report reliability, and caregiver capacity, or for a reasoned formulation of her acute and chronic risk.

131. The MACI-II profile showed elevations for Depressive Affect and Suicidal Tendency and described possible hopelessness, suicidal ideation, and self-

harming ideation. The profile's Response Negativity score fell at the 99th percentile, which Janit noted could reflect either an unusually large number of genuine problems or overreporting. Janit nonetheless treated the results as clinically meaningful and concluded that the evaluation accurately reflected Fabiana's current functioning.

132. Janit diagnosed Major Depressive Disorder, Single Episode, Severe; Generalized Anxiety Disorder; Separation Anxiety Disorder; Attention-Deficit/Hyperactivity Disorder, Combined Presentation; Oppositional Defiant Disorder; Unspecified Neurodevelopmental Disorder; and Binge-Eating Disorder.

133. Janit's records do not document a comprehensive suicide-risk assessment or a reasoned acute-and-chronic risk formulation responsive to the March 21 disclosures.

134. Janit knew that a safety plan had been created during Fabiana's counseling in November 2023. Janit's records do not document any update to that plan responsive to Fabiana's newly disclosed consideration of a suicide plan and her refusal to describe it.

135. Janit's records do not document any assessment of Fabiana's access to potentially lethal means, any lethal-means counseling, any verification that means had been restricted, any crisis-response protocol, any emergency instructions to the Parents, any urgent psychiatric assessment, or any reasoned determination that routine outpatient care remained appropriate.

136. Janit's report made thirty-nine recommendations. Recommendation 16 instructed the Parents to monitor for increasing signs of depression or statements

suggesting suicidal ideation and to address them immediately with Fabiana's mental-health professional. A general instruction to monitor did not address the unresolved risk that the evaluation itself had identified.

137. The recommendations did not include an urgent psychiatric assessment or a specific referral for suicide-focused cognitive behavioral therapy, dialectical behavior therapy, DBT-informed treatment, or comparable evidence-based care proportionate to severe depression, prior self-harm, an acknowledged suicide plan, and a refusal to disclose its details.

138. A six-month two-way release authorized Janit's practice to exchange information with Dr. Watson, and Janit knew that Fabiana was in therapy. Janit's records do not document any collateral contact with Dr. Watson or any transmission of the material suicide-risk findings to Fabiana's treating providers.

139. Janit Services billed for family counseling without the patient on May 8, 2024. The records do not establish the content of that service or document any structured, risk-focused follow-up.

140. Other providers later documented periods of improvement and denials of current or recent suicidal ideation. Those later reports did not discharge the duties that arose when Janit's evaluation identified a history of self-harm, extensive suicide-related endorsements, an acknowledged suicide plan, a refusal to disclose plan details, and severe major depression.

**I. The Final Day**

141. On September 3, 2024, Fabiana attended what became her final counseling session with Spriggs. Spriggs observed that Fabiana was distracted or

"zoned out," repeatedly stopped speaking with a far-off look, and appeared quieter and more down than usual. Fabiana disclosed renewed bullying at school and online and said that she wanted to lie down.

142. Spriggs' summary states that she asked Fabiana about fatigue, illness, distraction, hunger, and medication. It does not document a direct suicide inquiry, a structured risk reassessment, a review of the safety plan, any warning to Fabiana's Parents, any verification of means safety, any crisis contact, any urgent psychiatric or emergency evaluation, or any consideration of a higher level of care.

143. Spriggs scheduled a next appointment and ended the session.

144. In the final two days of her life, Fabiana sent and received approximately 780 direct messages on TikTok and ran dozens of searches on the product. Upon information and belief, and as the account data in TikTok Defendants' and Instagram Defendants' exclusive possession will confirm, the recommendation systems of both products delivered to Fabiana, in the months and days before her death, content concerning depression, self-harm, and suicide of the kind that TikTok Defendants' own analysis found to dominate the feed of another child who died by suicide, and of the kind that the Commonwealth of Pennsylvania has alleged, based on its own test account, TikTok delivers unsolicited to accounts registered to thirteen-year-olds. Plaintiffs allege those facts to establish Fabiana's exposure, Defendants' knowledge, foreseeability, and causation; Plaintiffs do not seek to hold any Defendant liable for the content of any post.

145. At approximately 10:55 p.m. on September 3, 2024, Fabiana died by suicide by hanging at her home.

146. Fabiana's death certificate identifies depression as a significant condition contributing to her death.

**J. Causation**

147. Fabiana's injuries in life and her death resulted from the concurrent acts and omissions of all Defendants. Georgia law does not require that any one Defendant's conduct be the sole cause; it requires that each Defendant's conduct be a proximate contributing cause, and the concurrent negligence of several actors may combine to produce a single indivisible injury.

148. The Estate's claims for Fabiana's injuries in life do not depend on the cause of her death. TikTok Defendants' and Instagram Defendants' products, and the misrepresentations that induced their use, proximately caused Fabiana's compulsive use, sleep disruption, anxiety, depression, self-harm, diminished self-worth, and loss of relationships, and the pain and suffering that accompanied each. Those injuries followed as the natural and probable consequences of the design choices alleged above, and the Defendants' own research predicted them.

149. As to Fabiana's death, Georgia law treats suicide as an intervening cause in ordinary negligence cases, but recognizes exceptions where the defendant owed the decedent an unusual duty to prevent the decedent from harm, and where the defendant's wrongful conduct produced a rage, frenzy, or uncontrollable impulse. *City of Richmond Hill v. Maia*, 301 Ga. 257 (2017); *Purcell v. Breese*, 250 Ga. App.

472 (2001); *Brandvain v. Ridgeview Institute, Inc.*, 188 Ga. App. 106 (1988), aff'd, 259 Ga. 376 (1989). Where a mental health provider undertakes the care of a suicidal patient, the provider's failure to assess and respond to that risk may proximately cause the patient's suicide, and the question belongs to the jury. *Purcell*, 250 Ga. App. 472; *Peterson v. Reeves*, 315 Ga. App. 370 (2012).

150. The Mental Health Defendants stood in exactly that relationship with Fabiana. Each undertook to evaluate, treat, or help manage her suicide risk. Each held the authority and the professional means to assess that risk, to warn and instruct her Parents, to secure the means she had identified, to coordinate her care, and to escalate her to crisis, psychiatric, or higher-level services. They undertook to prevent that very danger. Their unusual duty to protect Fabiana from that danger places her death within Georgia's special-relationship exception, and their failure to discharge that duty proximately caused it.

151. TikTok Defendants and Instagram Defendants likewise owed Fabiana an unusual duty. Each undertook, through public representations about age restrictions and parental controls, to protect minor users from psychological harm and self-harm. Each recorded, in real time, the volume and timing of Fabiana's use, including approximately 780 direct messages and dozens of searches in the final two days of her life, and each possessed the means to limit that use and to alert her Parents to it. Each placed itself between Fabiana and her Parents by building parental controls that the products themselves undermined and by withholding the notifications that would have alerted her Parents to her use. Each exercised control

over Fabiana's environment for hours each day through a feed built to hold her attention. No stranger to Fabiana held that knowledge or that control. Having assumed the role of guardian of minor users' safety, and having occupied a position no parent could occupy, TikTok Defendants and Instagram Defendants owed Fabiana a duty to protect her from the harm their products produced, and their failure to discharge it proximately caused her death.

152. Fabiana's death also falls within Georgia's uncontrollable-impulse exception. She had turned thirteen six months earlier. Her treating professionals documented impulsivity, a fixation with death, and severe major depression. On the day she died, she presented as dissociated, repeatedly falling silent with a far-off look, after renewed bullying at school and online. In the two days before her death, she exchanged roughly 780 messages on TikTok and ran dozens of searches. Upon information and belief, TikTok Defendants' and Instagram Defendants' products drove Fabiana into an acute state of dysregulation and despair in those final hours, and she acted in that state, in response to an impulse she could not control and without the deliberate volition of a person of mature judgment and sound mind. Plaintiffs anticipate that expert testimony will confirm that a thirteen-year-old with Fabiana's clinical profile, subjected to the compulsive-use loop and content amplification described above, lacks the capacity to resist the impulse those products produced.

153. Each Defendant's own knowledge made Fabiana's death foreseeable. The Mental Health Defendants knew from their own records that Fabiana had

considered a plan and had access to means. TikTok Defendants knew from their own experiment that their feed had saturated another child with content concerning suicide and sadness before he died by suicide. Instagram Defendants knew from their own research that adolescents with histories of bullying succumbed most readily to compulsive use and that teenagers encountered suicide and self-injury content at higher rates than adults. No Defendant may treat as unforeseeable the harm its own documents predicted.

154. The negligence of the Mental Health Defendants did not supersede the wrongful conduct of TikTok Defendants and Instagram Defendants, and the wrongful conduct of TikTok Defendants and Instagram Defendants did not supersede the negligence of the Mental Health Defendants. Each set of Defendants acted on a child already injured by the other, and each could foresee that a suicidal adolescent would continue to use the products and would continue in outpatient care. Their acts and omissions combined to cause one death.

155. More likely than not, timely structured risk assessment, direct caregiver warning and engagement, removal or restriction of accessible means, urgent crisis or psychiatric evaluation, coordinated suicide-specific treatment, and an appropriate higher level of care would have interrupted the chain of events that ended in Fabiana's death. More likely than not, a TikTok and an Instagram designed with the safer alternatives alleged above would not have captured Fabiana at eleven, would not have held her through her deterioration, and would not have acted on her mind in the hours before she died.

156. As a direct and proximate result of the acts and omissions alleged, individually and in combination, Fabiana suffered injuries in life and died, and the Parents lost the full value of her life.

**K. Alternative Allegation Concerning Recommendation Systems**

157. In the alternative, and only to the extent TikTok Defendants or Instagram Defendants contend that their recommendation systems reflect their own editorial judgment about what each user should see, Plaintiffs allege that such judgment constitutes those Defendants' own conduct and their own expression, for which they, not any third party, bear responsibility. Plaintiffs do not rely on this allegation for any Count below and plead it solely in response to any contention that 47 U.S.C. § 230 shields the design features at issue.

**COUNT I: STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**(TikTok Defendants)**

158. TikTok Defendants manufactured TikTok and distributed it as new personal property to consumers, including Fabiana, within the meaning of O.C.G.A. § 51-1-11(b).

159. When TikTok Defendants distributed TikTok to Fabiana, the product was not merchantable and reasonably suited to the use intended. The risks inherent in its design, including the intermittent variable reward schedule, infinite scroll, autoplay, engagement-timed notifications, public approval metrics, ephemeral content, appearance-altering filters, absent age verification, absent default protections for minors, and parental controls the product itself undermined,

outweighed the utility of that design, and safer alternative designs existed at nominal cost.

160. TikTok reached Fabiana without substantial change in the condition in which TikTok Defendants distributed it, and Fabiana used it in the manner TikTok Defendants intended.

161. The defective condition of TikTok when distributed proximately caused Fabiana's compulsive use, sleep disruption, anxiety, depression, self-harm, and diminished self-worth, together with the pain and suffering that accompanied them, and proximately contributed to her death.

162. TikTok Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b), and Plaintiffs seek those damages under strict liability.

**COUNT II: STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**(TikTok Defendants)**

163. TikTok Defendants knew, before Fabiana began using TikTok, that their design produced compulsive use in children and that compulsive use produced anxiety, depression, sleep loss, self-harm, and, in some children, suicide. TikTok Defendants also knew that users and their parents did not and could not know those facts.

164. TikTok Defendants owed a duty to warn users and their parents, including Fabiana and the Parents, of those dangers and to instruct them on safe use, in a manner reasonably calculated to reach them at the time of account creation and during use.

165. TikTok Defendants provided no such warning. TikTok reached Fabiana with no warning of its addictive design or of the mental-health risks that TikTok Defendants' own research had identified, and with public representations of safety that contradicted what TikTok Defendants knew.

166. Had TikTok Defendants warned adequately, Fabiana would not have used TikTok as she did, and the Parents would not have permitted her to do so.

167. The absence of an adequate warning rendered TikTok defective when distributed and proximately caused Fabiana's injuries in life and contributed to her death.

168. TikTok Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b), and Plaintiffs seek those damages under strict liability.

**COUNT III: NEGLIGENT DESIGN, DISTRIBUTION, AND OPERATION**
**(TikTok Defendants)**

169. TikTok Defendants owed Fabiana a duty to exercise ordinary care in designing, testing, distributing, and operating TikTok, including a duty to select among available designs so as to reduce the foreseeable risk of harm to the children they knew would use it.

170. TikTok Defendants breached that duty by designing TikTok to capture compulsive use by children through the features alleged above, by distributing it to children without effective age verification or default protections, by building parental controls that the product itself undermined, and by declining to implement the safer

alternative designs alleged above despite actual knowledge that the design harmed children.

171. Plaintiffs do not allege a failure to prevent an addiction that arose from some other source. TikTok Defendants intentionally designed TikTok to produce compulsive use and knew the mental-health consequences of that design for adolescents. An actor who deliberately pursues a course of conduct with known risks to children does not exercise ordinary care by continuing it.

172. TikTok Defendants' breaches proximately caused Fabiana's injuries in life and contributed to her death.

173. TikTok Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b).

**COUNT IV: NEGLIGENT FAILURE TO WARN**
**(TikTok Defendants)**

174. TikTok Defendants owed Fabiana and the Parents a duty to exercise ordinary care to warn of the dangers of TikTok that TikTok Defendants knew or reasonably should have known, including the dangers of compulsive use, anxiety, depression, sleep loss, self-harm, and suicide among adolescent users.

175. TikTok Defendants breached that duty by providing no warning, by burying such safety information as existed in settings and policies that children and parents do not read, and by affirmatively representing TikTok as safe.

176. Had TikTok Defendants warned adequately, Fabiana would not have used TikTok as she did, and the Parents would not have permitted her to do so.

177. TikTok Defendants' breach proximately caused Fabiana's injuries in life and contributed to her death.

178. TikTok Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b).

**COUNT V: NEGLIGENT UNDERTAKING**
**(TikTok Defendants)**

179. TikTok Defendants undertook, for consideration, to render services for the protection of minor users of TikTok, including Fabiana. TikTok Defendants represented publicly that they restricted the product by age and furnished parents with tools to supervise and limit their children's use. TikTok Defendants built into TikTok systems designed to detect underage users, to limit minors' use, and to notify and empower parents.

180. TikTok Defendants should have recognized those services as necessary for the protection of minor users, because TikTok Defendants knew from their own research that the product produced compulsive use and mental-health harm in adolescents and that parents could not observe or control that use without TikTok Defendants' assistance.

181. Having undertaken those services, TikTok Defendants owed Fabiana and the Parents a duty to perform them with ordinary care.

182. TikTok Defendants performed them negligently. Their age restrictions admitted an eleven-year-old. Their parental controls permitted the child to disable them silently. Their usage limits yielded to a passcode the child selected herself. Their

notifications to parents omitted excessive and late-night use, the events that mattered.

183. TikTok Defendants' failure to exercise ordinary care increased the risk of harm to Fabiana beyond that which would have existed had TikTok Defendants never undertaken the protective role, because the Parents relied on TikTok Defendants' representations and tools in permitting Fabiana to continue using TikTok and forwent measures they would otherwise have taken.

184. TikTok Defendants' negligent performance of their undertaking proximately caused Fabiana's injuries in life and contributed to her death.

185. TikTok Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b).

**COUNT VI: STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**(Instagram Defendants)**

186. Instagram Defendants manufactured Instagram and distributed it as new personal property to consumers, including Fabiana, within the meaning of O.C.G.A. § 51-1-11(b).

187. When Instagram Defendants distributed Instagram to Fabiana, the product was not merchantable and reasonably suited to the use intended. The risks inherent in its design, including the intermittent variable reward schedule, infinite scroll, autoplay, engagement-timed notifications, public approval metrics, ephemeral content, appearance-altering filters, absent age verification, absent default protections for minors, and parental controls the product itself undermined,

outweighed the utility of that design, and safer alternative designs existed at nominal cost.

188. Instagram reached Fabiana without substantial change in the condition in which Instagram Defendants distributed it, and Fabiana used it in the manner Instagram Defendants intended.

189. The defective condition of Instagram when distributed proximately caused Fabiana's compulsive use, sleep disruption, anxiety, depression, self-harm, and diminished self-worth, together with the pain and suffering that accompanied them, and proximately contributed to her death.

190. Instagram Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b), and Plaintiffs seek those damages under strict liability.

**COUNT VII: STRICT PRODUCTS LIABILITY (FAILURE TO WARN)**
**(Instagram Defendants)**

191. Instagram Defendants knew, before Fabiana began using Instagram, that their design produced compulsive use in children and that compulsive use produced anxiety, depression, sleep loss, self-harm, and, in some children, suicide. Instagram Defendants also knew that users and their parents did not and could not know those facts.

192. Instagram Defendants owed a duty to warn users and their parents, including Fabiana and the Parents, of those dangers and to instruct them on safe use, in a manner reasonably calculated to reach them at the time of account creation and during use.

193. Instagram Defendants provided no such warning. Instagram reached Fabiana with no warning of its addictive design or of the mental-health risks that Instagram Defendants' own research had identified, and with public representations of safety that contradicted what Instagram Defendants knew.

194. Had Instagram Defendants warned adequately, Fabiana would not have used Instagram as she did, and the Parents would not have permitted her to do so.

195. The absence of an adequate warning rendered Instagram defective when distributed and proximately caused Fabiana's injuries in life and contributed to her death.

196. Instagram Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b), and Plaintiffs seek those damages under strict liability.

**COUNT VIII: NEGLIGENT DESIGN, DISTRIBUTION, AND OPERATION (Instagram Defendants)**

197. Instagram Defendants owed Fabiana a duty to exercise ordinary care in designing, testing, distributing, and operating Instagram, including a duty to select among available designs so as to reduce the foreseeable risk of harm to the children they knew would use it.

198. Instagram Defendants breached that duty by designing Instagram to capture compulsive use by children through the features alleged above, by distributing it to children without effective age verification or default protections, by building parental controls that the product itself undermined, and by declining to

implement the safer alternative designs alleged above despite actual knowledge that the design harmed children.

199. Plaintiffs do not allege a failure to prevent an addiction that arose from some other source. Instagram Defendants intentionally designed Instagram to produce compulsive use and knew the mental-health consequences of that design for adolescents. An actor who deliberately pursues a course of conduct with known risks to children does not exercise ordinary care by continuing it.

200. Instagram Defendants' breaches proximately caused Fabiana's injuries in life and contributed to her death.

201. Instagram Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b).

**COUNT IX: NEGLIGENT FAILURE TO WARN**
**(Instagram Defendants)**

202. Instagram Defendants owed Fabiana and the Parents a duty to exercise ordinary care to warn of the dangers of Instagram that Instagram Defendants knew or reasonably should have known, including the dangers of compulsive use, anxiety, depression, sleep loss, self-harm, and suicide among adolescent users.

203. Instagram Defendants breached that duty by providing no warning, by burying such safety information as existed in settings and policies that children and parents do not read, and by affirmatively representing Instagram as safe.

204. Had Instagram Defendants warned adequately, Fabiana would not have used Instagram as she did, and the Parents would not have permitted her to do so.

205. Instagram Defendants' breach proximately caused Fabiana's injuries in life and contributed to her death.

206. Instagram Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b).

**COUNT X: NEGLIGENT UNDERTAKING**
**(Instagram Defendants)**

207. Instagram Defendants undertook, for consideration, to render services for the protection of minor users of Instagram, including Fabiana. Instagram Defendants represented publicly that they restricted the product by age and furnished parents with tools to supervise and limit their children's use. Instagram Defendants built into Instagram systems designed to detect underage users, to limit minors' use, and to notify and empower parents.

208. Instagram Defendants should have recognized those services as necessary for the protection of minor users, because Instagram Defendants knew from their own research that the product produced compulsive use and mental-health harm in adolescents and that parents could not observe or control that use without Instagram Defendants' assistance.

209. Having undertaken those services, Instagram Defendants owed Fabiana and the Parents a duty to perform them with ordinary care.

210. Instagram Defendants performed them negligently. Their age restrictions admitted an eleven-year-old. Their parental controls permitted the child to disable them silently. Their usage limits yielded to a passcode the child selected

herself. Their notifications to parents omitted excessive and late-night use, the events that mattered.

211. Instagram Defendants' failure to exercise ordinary care increased the risk of harm to Fabiana beyond that which would have existed had Instagram Defendants never undertaken the protective role, because the Parents relied on Instagram Defendants' representations and tools in permitting Fabiana to continue using Instagram and forwent measures they would otherwise have taken.

212. Instagram Defendants' negligent performance of their undertaking proximately caused Fabiana's injuries in life and contributed to her death.

213. Instagram Defendants owe the Parents the full value of Fabiana's life and owe the Estate the damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b).

**COUNT XI: PROFESSIONAL NEGLIGENCE**
**(Spriggs)**

214. Spriggs entered a professional counselor-patient relationship with Fabiana and owed her the duty, under O.C.G.A. § 51-1-27 and Georgia common law, to exercise the degree of care and skill ordinarily employed by licensed professional counselors generally under like circumstances.

215. Spriggs breached that duty in the following respects, each of which Jessica Lavender, LPC-MHSP-S, identifies in the affidavit filed as Exhibit A:

(a) assigning an unsupported and inadequately documented "Low" risk formulation at intake despite chronic suicidal ideation, recent recurrent cutting while suicidal, access to lethal means, impulsivity, and preoccupation with death;

(b) failing to determine and document whether Fabiana's cutting while suicidal represented suicidal behavior, nonsuicidal self-injury, or both;

(c) failing to conduct and document timely, structured, developmentally appropriate suicide-risk reassessments after the October 2023 and May 2024 PHQ-9 results, each of which reflected severe depression and a positive suicide or self-harm response;

(d) failing to create and document a timely and individualized safety and lethal-means plan with defined caregiver responsibilities, removal or secure storage of identified means, verification of restricted access, and patient-specific crisis instructions;

(e) failing to maintain contemporaneous clinical-progress documentation sufficient to support continuity of care, reassessment, intervention, caregiver communication, coordination, and disposition across thirty-eight encounters;

(f) failing to formulate and directly treat Fabiana's severe depression, severe anxiety, suicidality, recurrent self-harm, and emotional dysregulation with a treatment plan proportionate to their severity, and instead pursuing trauma-focused work during clinical instability;

(g) failing to coordinate, and to document coordination, with the psychiatric, psychological, medical, school, and other collateral providers involved in Fabiana's care;

(h) failing, after Fabiana disclosed a suicide plan and access to means, to conduct and document a comprehensive reassessment, to notify a Parent immediately, to verify means restriction, to obtain urgent psychiatric or crisis evaluation, and to consider a higher level of care; and

(i) failing, at the final session on September 3, 2024, to conduct and document a direct, structured suicide-risk reassessment and to escalate care urgently in response to renewed bullying, withdrawal, depressed presentation, and dissociated behavior.

216. Spriggs' departures from the standard of care directly and proximately caused, and substantially contributed to, Fabiana's injuries and death.

**COUNT XII: VICARIOUS LIABILITY**
**(HWE)**

217. HWE undertook to provide outpatient mental-health services to Fabiana, employed Spriggs, billed for her services, and held her out as the professional counselor rendering those services on HWE's behalf.

218. Spriggs acted at all relevant times as HWE's employee and actual or apparent agent, within the course and scope of the professional services HWE undertook to provide to Fabiana.

219. Under O.C.G.A. § 51-2-2 and Georgia agency law, HWE bears vicarious liability for Spriggs' professional negligence and for the damages it proximately caused.

## COUNT XIII: PROFESSIONAL NEGLIGENCE
## (Janit)

220. Janit entered a psychologist-patient relationship with Fabiana for psychological evaluation, treatment planning, and related professional services, and owed her the duty, under O.C.G.A. § 51-1-27 and Georgia common law, to exercise the degree of care and skill ordinarily employed by clinical psychologists generally under like circumstances.

221. Janit breached that duty in the following respects, each of which Zachary K. Blumkin, Psy.D., ABPP, identifies in the affidavit filed as Exhibit B:

(a) failing, after Fabiana endorsed nearly all self-harm and suicide-related MACI-II items, disclosed prior self-harm, acknowledged consideration of a suicide plan, and refused to provide details once told her mother would be informed, to conduct and document a suicide-risk assessment addressing ideation, intent, plan specificity and timing, access to means, preparatory behavior, prior attempts and self-harm, acute and chronic risk factors, near-term stressors, protective factors, caregiver capacity, and the rationale for the assessed risk level and disposition;

(b) failing, beyond notifying Fabiana's mother, to develop or ensure prompt implementation of a safety plan responsive to the March 21, 2024 findings, to assess and counsel restriction of access to lethal means, to provide crisis-response and emergency-escalation instructions, and to document a reasoned determination that routine outpatient follow-up was sufficient;

(c) issuing treatment recommendations that lacked the specificity and proportion required by the combination of severe major depressive disorder, prior self-harm, extensive suicide-related endorsements, an acknowledged suicide plan, and a refusal to disclose plan details, including the absence of an urgent psychiatric assessment and of a suicide-focused CBT or DBT referral; and

(d) failing, despite knowledge that Fabiana was in therapy and a two-way release authorizing communication with existing providers, to make reasonable collateral contact and to communicate the material suicide-risk findings and recommendations to Fabiana's existing providers.

222. Janit's departures from the standard of care, considered together and in combination with the other departures alleged, directly and proximately caused, and substantially contributed to, Fabiana's injuries and death.

**COUNT XIV: VICARIOUS LIABILITY**
**(Janit Services)**

223. Janit Services undertook to provide psychological evaluation and related professional services to Fabiana, billed for those services, and held Janit out as the psychologist rendering them on its behalf.

224. Janit acted at all relevant times as Janit Services's member, employee, or actual or apparent agent, within the course and scope of the professional services Janit Services undertook to provide to Fabiana.

225. Under O.C.G.A. § 51-2-2 and Georgia agency law, Janit Services bears vicarious liability for Janit's professional negligence and for the damages it proximately caused.

**COUNT XV: WRONGFUL DEATH**
**(All Defendants)**

226. Fabiana's death resulted from the tortious acts and omissions of each Defendant alleged in Counts I through XIV, which combined to cause her death.

227. Under O.C.G.A. §§ 51-4-1, 51-4-4, and 19-7-1(c), the Parents are entitled to recover from each Defendant the full value of Fabiana's life as shown by the evidence, without deduction for necessary or personal expenses, including both the economic value of her lost life and the intangible value of a life she would have lived for decades, measured from her own perspective.

**COUNT XVI: ESTATE CLAIMS FOR INJURIES IN LIFE AND EXPENSES**
**(All Defendants)**

228. Fabiana's causes of action for the injuries she suffered in life survived her death and vest in the Administrator of her Estate under O.C.G.A. § 9-2-41.

229. Before her death, and as a proximate result of the acts and omissions of TikTok Defendants and Instagram Defendants, Fabiana suffered compulsive use of their products, sleep disruption, severe anxiety, severe depression, recurrent self-harm, diminished self-worth, loss of relationships, and the mental and physical pain that accompanied each. Those injuries do not depend on the cause of her death, and the Estate may recover for them whether or not any Defendant's conduct proximately caused her death.

230. Before her death, and as a proximate result of the acts and omissions of the Mental Health Defendants, Fabiana endured untreated and inadequately treated severe depression, anxiety, suicidality, and self-harm, and the mental and physical pain that accompanied each.

231. Fabiana experienced conscious pain, suffering, fright, and shock in the final hours and moments of her life.

232. Under O.C.G.A. § 51-4-5(b), the Administrator is entitled to recover from each Defendant the funeral, medical, and other necessary expenses resulting from Fabiana's injuries and death.

233. The Administrator is entitled to recover from each Defendant all damages recoverable under O.C.G.A. §§ 9-2-41 and 51-4-5(b) in an amount to be determined by the jury.

**COUNT XVII: PUNITIVE DAMAGES**
**(TikTok Defendants and Instagram Defendants)**

234. TikTok Defendants and Instagram Defendants knew, from their own research, that their products produced compulsive use in children and that compulsive use produced anxiety, depression, sleep loss, self-harm, and, in some children, suicide. Each continued to design, distribute, and market its product to children without change, concealed its research, and represented the product as safe.

235. Each could have implemented the safer alternative designs alleged above at nominal cost. Each declined because those alternatives reduce engagement and revenue.

236. TikTok Defendants conducted experiments on children without consent, learned that a child in the unprotected group had died by suicide after his feed filled with content concerning suicide and sadness, and continued the experiment.

237. Instagram Defendants designed a study of adolescent mental health so that its publication would advance the narrative that social media does not harm children, while acknowledging internally that the study would likely find the opposite.

238. That conduct shows willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which raises the presumption of conscious indifference to consequences.

239. TikTok Defendants and Instagram Defendants acted, and failed to act, with the specific intent to cause harm, in that each was substantially certain that its design produced compulsive use and its consequences in children and each intended that result as the mechanism of its revenue. Under O.C.G.A. § 51-12-5.1(f), no limitation applies to the amount of punitive damages that may be awarded against them.

240. In the alternative, the Estate's product liability claims fall within O.C.G.A. § 51-12-5.1(e), under which no limitation applies to the amount of punitive damages that may be awarded.

241. Because the Estate seeks damages for Fabiana's conscious pain, suffering, fright, and shock in the final hours and moments of her life, punitive damages are recoverable.

242. The Estate seeks punitive damages against TikTok Defendants and Instagram Defendants in an amount to be determined by the jury, sufficient to penalize, punish, and deter.

## COUNT XVIII: EXPENSES OF LITIGATION
## (TikTok Defendants and Instagram Defendants)

243. TikTok Defendants and Instagram Defendants acted in bad faith in the transactions and occurrences out of which this action arises. Each intentionally designed its product to produce compulsive use in children, concealed the harm it knew that design produced, and misrepresented the safety of its product to children and parents.

244. TikTok Defendants and Instagram Defendants have also caused Plaintiffs unnecessary trouble and expense.

245. Under O.C.G.A. § 13-6-11, Plaintiffs are entitled to recover from TikTok Defendants and Instagram Defendants the expenses of this litigation, including reasonable attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that:

(a) process and summons issue and be served upon each Defendant as provided by law;

(b) judgment be entered in favor of the Parents and against each Defendant for the full value of the life of Fabiana Angelyz Rosario Echevarria, in an amount to be determined by the jury;

(c) judgment be entered in favor of the Administrator of the Estate of Fabiana Angelyz Rosario Echevarria and against each Defendant for Fabiana's pain and suffering and other damages recoverable under O.C.G.A. § 9-2-41, and for funeral, medical, and other necessary expenses recoverable under O.C.G.A. § 51-4-5(b), in amounts to be determined by the jury;

(d) punitive damages be awarded against TikTok Defendants and Instagram Defendants in an amount to be determined by the jury;

(e) the expenses of litigation, including reasonable attorney's fees, be awarded against TikTok Defendants and Instagram Defendants under O.C.G.A. § 13-6-11;

(f) all costs of this action, together with pre-judgment and post-judgment interest as allowed by law, be assessed against Defendants;

(g) the jury allocate fault and the Court enter judgment as Georgia law permits; and

(h) the Court grant such other and further relief as it deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted this 2nd day of September, 2026.

**PENN LAW LLC**

*/s/ Darren W. Penn*
DARREN W. PENN
Georgia Bar No. 571322
KEVIN M. KETNER
Georgia Bar No. 418233

ETHAN M. PRINCENTHAL
Georgia Bar No. 091366

4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655
darren@pennlawgroup.com
kevin@pennlawgroup.com
ethan@pennlawgroup.com

***Attorneys for Plaintiffs***

# EXHIBIT A

STATE OF TENNESSEE

COUNTY OF RUTHERFORD

**AFFIDAVIT OF JESSICA LAVENDER, MBA, M.S., LPC-MHSP-S**

PERSONALLY APPEARED before the undersigned officer duly authorized to administer oaths in this state, comes Jessica Lavender, MBA, M.S., LPC-MHSP-S, who after first being duly sworn, deposes and states as follows:

1.

I am a Licensed Professional Counselor–Mental Health Service Provider and Approved Supervisor in the State of Tennessee, license number 2712. I hold a Master of Science in Counseling Psychology from Lipscomb University, a Master of Business Administration from Louisiana State University Shreveport, and a Bachelor of Science from Middle Tennessee State University.

2.

I have more than fifteen (15) years of behavioral-health clinical and operational experience across outpatient, inpatient, partial-hospitalization, intensive-outpatient, residential, integrated-care, and virtual-care settings. My work has included clinical assessment and intervention, development and oversight of clinical programs, clinical auditing, measurement-based care, quality and regulatory oversight, supervision of clinical staff, care coordination, and level-of-care determinations.

3.

I currently serve as Director of Outpatient Services for Integrated Telehealth Partners. In that role, I lead behavioral-health operations across approximately forty-five (45) partner inpatient and outpatient facilities and have direct operational responsibility for physicians, nurse practitioners, therapists, nurses, and care-coordination staff, including responsibilities involving clinical quality, access, regulatory compliance, provider capacity, and consistent care delivery.

4.

From July 2022 through July 2024, I built and administered a child and adolescent intensive-outpatient and partial-hospitalization service line for patients ages ten (10) through eighteen (18) at Embrace U. My responsibilities included clinical and operational workflow design, curriculum development, clinical auditing, staffing, regulatory compliance, Joint Commission accreditation, and coordination of medical, nursing, therapy, and administrative services. From September 2017 through October 2021, I directed partial-hospitalization and intensive-outpatient services at Vanderbilt Psychiatric Hospital, where I started the intensive-outpatient service line and implemented measurement-based care and outcomes processes.

5.

I have actual professional knowledge and experience in the clinical evaluation, risk stratification, and management of children and adolescents presenting with depression, anxiety, suicidal ideation, suicide planning, self-injurious behavior, emotional dysregulation, trauma-related symptoms, attention-deficit/hyperactivity disorder, and oppositional behaviors. My experience includes structured suicide-risk assessment, safety planning, lethal-means assessment and counseling, family and caregiver involvement, clinical documentation, treatment planning, psychiatric coordination, and determination of the appropriate level of care, including mobile-crisis response, urgent psychiatric or emergency evaluation, partial hospitalization, intensive outpatient treatment, and hospitalization when clinically indicated.

6.

During at least three (3) of the five (5) years immediately preceding the care at issue, from September 2023 through September 2024, and continuing to the present, I have been actively engaged in the practice and clinical or operational oversight of behavioral-health services, including child and adolescent higher-level-of-care services, outpatient and inpatient services, clinical auditing, measurement-

based care, and suicide-risk-management systems, with sufficient frequency to establish current, reliable knowledge of the applicable standards.

7.

The opinions expressed in this affidavit concern the assessment, documentation, and management of suicide risk and self-harm by a licensed professional counselor treating a minor in an outpatient setting; the development and implementation of an appropriate treatment and safety plan; caregiver involvement; coordination of care; and timely escalation to crisis, psychiatric, emergency, or higher-level services when clinically indicated. These duties are standard clinical competencies for similarly situated licensed professional counselors who undertake treatment of a suicidal and self-harming child or adolescent.

8.

I am competent to testify regarding these matters. I make this affidavit based upon my education, training, experience, and review of the materials identified below. I am over eighteen (18) years of age and competent to make this affidavit.

9.

I have reviewed the certified forty-page record relating to Fabiana A. Rosario Echevarria and the care provided by Avery Spriggs, M.A., LCMHC, LPC, through Healing at Water's Edge, sometimes referred to as Healing Waters Edge, including the intake assessment, standardized measures, diagnostic assessments, diagnosis and treatment plan, safety plan, EMDR target plan, billing history, discharge summary, and Ms. Spriggs's February 22, 2026 response concerning record maintenance.

10.

Based on the records identified above, Fabiana was born on February 25, 2011 and was twelve (12) years old when she began outpatient treatment with Ms. Spriggs on September 23, 2023. Billing records reflect thirty-eight (38)

appointments through September 3, 2024. The discharge summary created the following morning states that the reason for discharge was Fabiana's death by suicide.

11.

At the September 23, 2023 intake, the records described suicidal ideation beginning at approximately age eight; a history of cutting beginning in 2023; cutting as often as every one or two days; approximately three cuts at a time; use of a razor and a knife; cuts deep enough to leave scars; and that Fabiana was suicidal while cutting. The same record identified impulsivity and frequent thoughts of or fixation with death. Although it stated that Fabiana was not currently suicidal, it did not adequately document whether the cutting constituted suicidal behavior or nonsuicidal self-injury, and it assigned a risk level of 'Low' without documenting a structured assessment or a reasoned distinction between acute and chronic risk.

12.

The intake record does not document the essential elements necessary to support its low-risk formulation, including the frequency, duration, and recency of suicidal thoughts; current and recent intent; plan or method; access to means; preparatory behavior; prior attempts; reasons for living; reliability of self-report; caregiver knowledge and response; or the factual and clinical rationale supporting continued routine outpatient treatment. The record also does not document contemporaneous lethal-means counseling directed to the razors and knives already identified in the intake.

13.

On October 5, 2023, the GAD-7 score was 15, reflecting severe anxiety, and the PHQ-9 score was 20, reflecting severe depression. On PHQ-9 item 9, Fabiana endorsed thoughts that she would be better off dead or of hurting herself more than half the days. The instrument expressly advised further assessment of risk. The available production contains no contemporaneous progress note documenting what

additional suicide inquiry was made, the resulting risk formulation, caregiver communication, means intervention, safety response, or disposition.

14.

A safety plan bears the date November 30, 2023, more than two months after the intake identified suicidal ideation and recent recurrent cutting. The plan lists triggers, warning signs, coping activities, support contacts, and crisis contacts. It does not document caregiver participation or assignment of monitoring responsibilities, removal or secure storage of razors, knives, medications, or other potentially lethal means, verification that access was restricted, or a patient-specific emergency-disposition decision.

15.

A diagnosis and treatment plan dated March 21, 2024 lists post-traumatic stress disorder, oppositional defiant disorder, attention-deficit/hyperactivity disorder, and binge-eating disorder. It includes self-harm and thoughts of death among its behavioral definitions and sets a goal to reduce self-harm. It does not contain a distinct, measurable suicide-risk-management plan, and it does not diagnose, rule out, or directly target the severe depression and severe anxiety reflected on the standardized measures. The record does not explain why the treatment plan dated March 21 lists ADHD and ODD while the supporting structured ADHD and ODD assessments in the production are dated May 2, 2024.

16.

On May 2, 2024, the GAD-7 score increased to 17, the PHQ-9 score increased to 22, and the PCL-5 score increased from 61 to 63. The anxiety and depression scores remained in the severe ranges, and PHQ-9 item 9 again reflected thoughts of death or self-harm. The available production again contains no contemporaneous progress note documenting a responsive suicide-risk assessment, caregiver communication, lethal-means intervention, safety-plan review, or reasoned level-of-care decision.

17.

In her February 22, 2026 response, Ms. Spriggs stated that she chose not to maintain progress or service notes for Fabiana and that this practice did not change until 2025. As a result, the available records do not contemporaneously document the content of the thirty-eight sessions, serial suicide-risk assessments, changes in acute or chronic risk, parental communications, means counseling, crisis interventions, treatment response, coordination with collateral providers, or the clinical reasoning supporting continued outpatient treatment. Several intake and screening records bear underlying completion dates in 2023 or 2024 but were not locked and signed until February 21, 2026. That timing raises a question regarding contemporaneity and record reliability that cannot be resolved from the production.

18.

The discharge summary retrospectively states that bullying led to a resurgence of suicidal ideation and self-harm; that regular risk assessments and safety planning occurred; and that Fabiana reported having a means and a plan but no intent to die. The summary does not identify the plan or means, when the disclosure occurred, the questions asked, the structured findings, the acute and chronic risk formulation, whether a caregiver was immediately informed, whether the means were removed or secured, what urgent intervention was implemented, or why routine outpatient treatment remained appropriate. A post-death discharge summary does not substitute for contemporaneous documentation of these high-stakes clinical decisions.

19.

The discharge summary further states that there were several ‘crisis situations’ during attempted EMDR work; that the EMDR target plan remained incomplete; and that EMDR was discontinued. It states that, at the final documented session on September 3, 2024, Fabiana was distracted or ‘zoned out,’ repeatedly stopped speaking with a far-off look, was quieter and more down than usual, disclosed renewed bullying at school and online, and wanted to lie down. The

summary describes questions about fatigue, illness, distraction, and medication, but it does not document a direct suicide inquiry, a structured risk reassessment, review of the safety plan, caregiver warning, means-restriction verification, mobile-crisis contact, urgent psychiatric or emergency evaluation, or referral to a higher level of care.

20.

When a similarly situated licensed professional counselor undertakes outpatient treatment of a minor with suicidal ideation, recurrent self-harm, severe depression or anxiety, or a reported plan and access to means, the applicable standard of care requires reasonable, clinically appropriate steps that include:

(a) perform and document a timely, developmentally appropriate, structured suicide-risk assessment at intake, after each positive suicide or self-harm screening response, upon disclosure of plan or means, whenever there is a material clinical change, and at discharge or transfer;

(b) assess current and recent ideation, frequency and duration, intent, plan specificity, method, access to means, preparatory behavior, prior attempts, nonsuicidal self-injury, acute and chronic risk factors, protective factors, triggers, reasons for living, and the reliability of self-report;

(c) formulate and document acute and chronic risk, explain the chosen risk level and treatment setting, and avoid relying on a screening score or a conclusory label without the supporting clinical analysis;

(d) involve the parent or guardian as clinically and legally appropriate for a minor, communicate material risk, assign monitoring responsibilities, and document the communication and response;

(e) create a collaborative, individualized safety plan promptly, restrict or remove lethal means, verify the means intervention, provide clear crisis instructions, and arrange structured follow-up;

(f) escalate to mobile crisis, urgent psychiatric or emergency evaluation, partial hospitalization, intensive outpatient care, or voluntary or involuntary hospitalization when indicated by the complete assessment. A reported suicide plan and access to means require urgent and documented action even when intent is denied;

(g) maintain sufficient and timely clinical documentation to support safe treatment and continuity of care, including risk reassessments, interventions, caregiver communications, treatment response, care coordination, and disposition; and

(h) use a treatment plan proportionate to the child's most dangerous conditions, including direct suicide and self-harm interventions, evidence-based treatment for depression and anxiety, family involvement, psychiatric and medical coordination, and recurring level-of-care reassessment. Trauma-focused work must not displace stabilization and direct risk treatment and should not proceed during clinical instability without documented readiness.

21.

The documentation standard is a clinical and patient-safety requirement, not merely an administrative preference. Psychotherapy or process notes are distinct from clinical progress documentation. The American Counseling Association Code of Ethics, Standard A.1.b, calls for counselors to create and maintain documentation necessary for professional services and to include sufficient and timely documentation to facilitate service delivery and continuity. Regardless of whether a separate regulation prescribed a particular note format, a counselor treating a suicidal and self-harming minor was required to maintain a clinical record sufficient to show the assessment, formulation, interventions, caregiver involvement, response, coordination, and plan.

22.

Based on the records identified above, and to a reasonable degree of professional certainty, it is my opinion that Avery Spriggs and Healing at Water's Edge failed to exercise the degree of care and skill ordinarily employed by similarly situated licensed professional counselors under similar circumstances. The factual bases for these opinions include the following:

(a) Ms. Spriggs assigned an unsupported and inadequately documented low-risk formulation at intake despite chronic suicidal ideation, recent recurrent cutting while suicidal, access to razors and knives, impulsivity, and death preoccupation. In my opinion, the documented presentation reflected high chronic risk and clinically significant acute indicators and was not consistent with a conclusory 'Low' designation without a complete structured assessment and reasoned rationale;

(b) Ms. Spriggs failed to determine and document whether the recent cutting while suicidal represented suicidal behavior or nonsuicidal self-injury. That distinction was essential to valid risk stratification and to application of a tool such as the C-SSRS and SAFE-T framework;

(c) Ms. Spriggs failed to document adequate responsive suicide-risk assessments after the October 2023 and May 2024 PHQ-9 results, each of which reflected severe depression and a positive suicide or self-harm item. The records do not show the questions asked, the risk formulation, caregiver communication, means intervention, safety response, or disposition at either point;

(d) Ms. Spriggs failed to create and document a timely and sufficiently individualized safety and lethal-means plan. The only safety plan produced is dated more than two months after intake and does not document caregiver responsibilities, removal or secure storage of identified means, verification of restricted access, or the rationale for continued outpatient management;

(e) Ms. Spriggs failed to maintain contemporaneous progress documentation sufficient to demonstrate ongoing assessment and management of a suicidal and self-harming child over thirty-eight sessions. The absence of such documentation impaired continuity, prevented meaningful review of changes in risk and response to treatment, and left critical clinical assertions to a retrospective discharge summary prepared after Fabiana's death;

(f) Ms. Spriggs failed to formulate and directly treat Fabiana's severe depression, severe anxiety, suicidality, recurrent self-harm, and emotional dysregulation with a treatment plan commensurate with their severity. Although EMDR is not categorically improper, it was not an adequate substitute for stabilization and direct suicide-focused treatment. The available records do not demonstrate an adequate course of DBT-A or DBT-informed treatment, CBT directed to the severe mood and anxiety symptoms, structured family or parent intervention, or an integrated suicide-risk-treatment plan;

(g) Ms. Spriggs failed to document adequate coordination with psychiatric, psychological, medical, school, and other collateral providers. The discharge summary states that outside services were advocated for and sought, but the produced record does not identify the providers, communications, findings, recommendations, or how those services were integrated into Fabiana's risk management;

(h) When Fabiana reportedly disclosed a suicide plan and access to means, Ms. Spriggs failed to document and implement action proportionate to that disclosure, including immediate caregiver notification, verified means restriction, urgent psychiatric or crisis evaluation, and reasoned consideration of voluntary admission or another higher level of care. Denial of intent did not eliminate the need for those steps; and

(i) At the final session, Ms. Spriggs failed to conduct and document a direct, structured suicide-risk reassessment and failed to urgently escalate care in

response to a marked change in presentation, renewed bullying, withdrawal, depressed appearance, and altered or zoned-out behavior. Those findings, viewed with Fabiana's known history, required direct assessment of suicidality, immediate caregiver engagement, verification of means safety, and urgent crisis or psychiatric disposition.

23.

The facts documented in the record support a high chronic suicide-risk formulation and, at critical points, clinically significant acute risk. I do not opine that every suicidal minor must be hospitalized. The appropriate disposition depends upon a complete and documented assessment. That assessment is precisely what the available records fail to show. Once a plan and access to means were disclosed, and again when acute deterioration appeared at the final session, urgent crisis or psychiatric evaluation, direct caregiver intervention, verified means restriction, and reasoned consideration of voluntary admission or another higher level of care were indicated.

24.

To a reasonable degree of professional probability, the acts and omissions described above were substantial contributing factors in Fabiana's death by suicide. More likely than not, timely structured risk assessment, direct caregiver warning and engagement, removal or restriction of accessible means, urgent crisis or psychiatric evaluation, and appropriate voluntary admission or other higher-level care would have interrupted the near-term chain of events and materially reduced the likelihood of suicide.

25.

I reserve the right to supplement these opinions if additional records, testimony, or materials become available.

FURTHER AFFIANT SAYETH NOT.

Jessica Lavender LPC-MHSP-S

Jessica Lavender, MBA, M.S., LPC-MHSP-S

Sworn to and subscribed before me

this 30th day of August, 2026.

Monika B. Ridley

Notary Public

MONIKA B. RIDLEY
STATE OF TENNESSEE NOTARY PUBLIC
RUTHERFORD COUNTY, TENN.

My commission expires:

8/19/2028

# EXHIBIT B

STATE OF NEW YORK

COUNTY OF Westchester

# AFFIDAVIT OF ZACHARY K. BLUMKIN, PSY.D., ABPP

PERSONALLY APPEARED before the undersigned officer duly authorized to administer oaths in this state, comes Zachary K. Blumkin, Psy.D., ABPP, who after first being duly sworn, deposes and states as follows:

1.

I am a clinical psychologist licensed to practice psychology in the State of New York (License No. 019728) and the State of New Jersey (License No. 35SI00670300). I am board certified in Clinical Psychology by the American Board of Professional Psychology and am a DBT-Linehan Board of Certification Certified Clinician.

2.

I am an Associate Professor of Medical Psychology (in Psychiatry) at Columbia University Irving Medical Center and hold an academic appointment at Children's Hospital of New York-Presbyterian. Since September 2022, I have served as Senior Clinical Director of the Faculty Practice Organization in the Department of Psychiatry at Columbia University Irving Medical Center.

3.

My clinical work has included service as a staff psychologist in pediatric psychiatry at the Children's Hospital of New York-Presbyterian, leadership of an adolescent Dialectical Behavior Therapy (DBT) program, coordination of an Attention-Deficit/Hyperactivity Disorder (ADHD) treatment program, service as Clinical Director of an intensive outpatient day program, and my current role as Senior Clinical Director of the Faculty Practice Organization in the Department of Psychiatry at Columbia University Irving Medical Center. Throughout my career, I have assessed and treated children and adolescents with depression, anxiety, suicidality, self-injurious behavior, ADHD, emotional dysregulation, and related psychiatric conditions. I have taught and supervised psychologists, physicians, and

other trainees in DBT, Cognitive Behavioral Therapy, suicide-risk and nonsuicidal-self-injury assessment, behavioral parent training, ADHD, and disruptive behavior disorders.

4.

I have actual professional knowledge and experience in child and adolescent clinical psychology, including psychological evaluation and treatment planning for youth presenting with severe depression, anxiety, suicidal ideation, suicide planning, nonsuicidal self-injury, ADHD, oppositional behavior, emotional dysregulation, bullying-related stress, and family conflict. My experience includes suicide-risk assessment, safety planning, lethal-means counseling, crisis-response planning, determination of the appropriate level of care, and evidence-based treatment using DBT, CBT, and behavioral parent training.

5.

During at least three (3) of the five (5) years immediately preceding the evaluation conducted from February 22, 2024 through March 21, 2024, and continuing to the present, I have been regularly engaged in the active practice and teaching of clinical psychology. That work has included clinical leadership and the supervision and instruction of clinicians providing outpatient assessment and treatment to children, adolescents, and adults with depression, suicidality, self-injury, emotional dysregulation, ADHD, and disruptive behavior, with sufficient frequency to maintain current and reliable knowledge of the applicable standards.

6.

The opinions expressed in this affidavit concern the professional duties of a clinical psychologist who performs an outpatient psychological evaluation of a child or adolescent and, during that evaluation, obtains information suggesting potentially life-threatening suicide risk. Those duties include adequate risk assessment and documentation, caregiver notification, safety and lethal-means planning, appropriate referral and escalation, evidence-based treatment

recommendations, and reasonable communication with existing treatment providers when authorized and clinically appropriate.

7.

I am competent to testify regarding these matters. I make this affidavit based upon my education, training, experience, and review of the records identified below. I am over eighteen (18) years of age and competent to make this affidavit.

8.

I have reviewed the following records and materials relating to Fabiana Rosario: Dr. Janit's certified records covering February 22, 2024 through May 8, 2024; the certified records of Grovetown Pediatrics covering March 4, 2022 through August 21, 2024; the certified records of Healing Waters Edge covering September 23, 2023 through September 3, 2024; the uncertified records of Evans Mental Health and Chelsea Carson covering June 17, 2024 through September 6, 2024; and the autopsy report. These are the only records and materials I reviewed in forming the opinions expressed in this affidavit.

9.

Based on the records identified above, Fabiana was a twelve-year-old child when Dr. Janit began his evaluation on February 22, 2024 and had turned thirteen by the March 2024 testing. The stated purpose of the evaluation was to clarify diagnoses and generate treatment recommendations. Dr. Janit served as the licensed psychologist, and a psychometrist administered portions of the testing under his evaluation process.

10.

Dr. Janit's report documented that Fabiana was attending therapy every other week; that her mother described a fixation with death; that Fabiana thought about death often; and that she had previously asked whether she would go to heaven if she killed herself. The report also documented peer bullying, racial or ethnic harassment, school-safety fears, loss of interest, family conflict, and a

maternal family history that included depression, bipolar disorder, anxiety, substance misuse, and other mental-health concerns.

11.

On March 21, 2024, Fabiana endorsed all but two MACI-II items pertaining to self-harm, suicidal ideation, and harming others. Dr. Janit's report states that she had not self-harmed in several months and that she acknowledged having considered a plan to complete suicide. When told that information disclosed to the psychometrist would be shared with her mother, Fabiana refused to provide further information about her suicidal ideation, while denying that she would attempt to harm herself. The report states that her mother was informed of these endorsements and was aware of prior self-harm.

12.

The MACI-II profile included elevations for Depressive Affect and Suicidal Tendency, and the report described possible hopelessness, suicidal ideation, and self-harming ideation. Dr. Janit appropriately noted that the Response Negativity score was at the 99th percentile and identified alternative explanations, including an unusually large number of genuine problems or possible overreporting. Nevertheless, the report treated the test results as clinically meaningful, concluded that the evaluation results were an accurate reflection of current functioning, and diagnosed Major Depressive Disorder, Single Episode, Severe, together with Generalized Anxiety Disorder, Separation Anxiety Disorder, ADHD Combined Presentation, Oppositional Defiant Disorder, Unspecified Neurodevelopmental Disorder, and Binge-Eating Disorder.

13.

Dr. Janit's report made thirty-nine (39) recommendations. Recommendation 16 instructed Fabiana's parents to monitor for increasing signs of depression or statements suggesting suicidal ideation and to address them immediately with her mental-health professional. The records produced do not contain a documented

comprehensive suicide-risk formulation, a formal safety plan, lethal-means restriction counseling, a crisis-response protocol, or a suicide-specific treatment referral arising from the March 21 disclosure. Although the records include a two-way release authorizing communication with Dr. Watson, the produced materials do not document collateral contact with Dr. Watson or transmission of the material risk findings to Fabiana's existing providers.

14.

The broader records reflect that Fabiana later received outpatient psychotherapy and psychiatric medication management, and that she denied current or recent suicidal ideation at several later encounters. The records further reflect that she died by suicide by hanging on September 3, 2024. Those later events do not change the professional duties that applied when Dr. Janit's evaluation identified self-harm history, extensive suicide-related endorsements, consideration of a suicide plan, refusal to provide plan details, and severe major depression.

15.

When an evaluating psychologist obtains these findings from a child or adolescent, the applicable standard of care requires reasonable, clinically appropriate steps within the evaluation role, including:

(a) conducting and documenting a suicide-risk assessment addressing current and recent ideation, intent, plan specificity and timing, access to means, preparatory behavior, prior attempts and self-harm, frequency and duration of thoughts, acute and chronic risk factors, near-term stressors, protective factors, caregiver capacity, and the rationale for the assessed risk level and disposition;

(b) notifying the caregiver and developing, or ensuring the prompt implementation of, a collaborative safety plan proportionate to the risk, including coping strategies, supportive contacts, crisis resources, clear

escalation instructions, and counseling to restrict access to potentially lethal means;

(c) determining and documenting the appropriate level of care, including urgent psychiatric or behavioral-health assessment, emergency evaluation, or hospitalization when indicated, and arranging timely follow-up rather than relying solely on a denial of intent when material questions about planning and means remain unresolved;

(d) making treatment recommendations that are specific and proportionate to severe depression, suicidality, self-harm, and emotional dysregulation, including suicide-focused evidence-based care such as DBT and appropriate CBT interventions; and

(e) making reasonable efforts, when authorized and feasible, to obtain relevant collateral information and communicate material risk findings and recommendations to existing treating providers so that the evaluation can inform continuity of care and ongoing risk management.

16.

Based on the records, and to a reasonable degree of professional certainty within clinical psychology, it is my opinion that Dr. Janit failed to exercise the degree of care and skill ordinarily employed by similarly situated clinical psychologists under similar circumstances. The factual bases for these opinions are set forth below:

(a) After documenting that Fabiana endorsed nearly all self-harm and suicide-related MACI-II items, had a history of self-harm, acknowledged consideration of a suicide plan, and refused to provide details after learning that her mother would be informed, Dr. Janit's produced records do not document an adequate suicide-risk assessment addressing the material elements identified in paragraph 15 or a reasoned acute-and-chronic risk formulation;

(b) Although notifying Fabiana's mother was an appropriate protective step, the produced records do not document a formal safety plan responsive to the March 21 findings, lethal-means assessment or restriction counseling, a crisis-response protocol, clear emergency escalation instructions, or a reasoned determination that routine outpatient follow-up was sufficient;

(c) The recommendations were not sufficiently specific or proportionate to the combination of Major Depressive Disorder, Single Episode, Severe, prior self-harm, extensive suicide-related test endorsements, acknowledged consideration of a suicide plan, and refusal to disclose plan details. The report did not document an urgent psychiatric assessment or a suicide-focused CBT or DBT referral, and the general instruction to monitor for worsening signs did not by itself address the unresolved risk identified during the evaluation; and

(d) Despite knowledge that Fabiana was already in therapy and the existence of a two-way release for Dr. Watson, the produced records do not document reasonable collateral consultation or communication of the material suicide-risk findings and recommendations to Fabiana's existing providers, limiting the evaluation's use for continuity of care and ongoing risk management.

17.

My opinion does not depend on the proposition that caregiver notification was unnecessary; it was necessary and appropriate. The departure is that notification, standing alone, did not resolve the unanswered questions about plan, timing, means, intent, acute and chronic risk, and protective factors, and did not substitute for documented risk formulation, proportionate safety planning, clinically appropriate disposition, and communication needed for implementation.

18.

My professional opinions concern the psychological services personally rendered by Dr. Janit. To the extent a court determines that Adrian Janit

Psychological Services L.L.C. is legally responsible for those services, the same departures and factual bases concern the services rendered through the practice. I do not offer an opinion on that legal determination.

19.

Based upon my education, training, experience, and review of the records identified in paragraph 8, and to a reasonable degree of professional certainty within clinical psychology, it is my opinion that the departures from the standard of care described above, considered together, more likely than not contributed to cause Fabiana's death by suicide. Those departures left the suicide risk identified during Dr. Janit's evaluation inadequately assessed, insufficiently communicated to Fabiana's treating providers, and without documented implementation of a coordinated safety plan, lethal-means counseling, suicide-specific treatment recommendations, and proportionate escalation of care. Although later records *reflect outpatient treatment and denials of suicidal ideation, such denials do not* eliminate the clinical significance of prior self-harm, acknowledged consideration of a suicide plan, refusal to disclose plan details, and severe depression. I do not opine that any individual departure was the sole cause of Fabiana's death; rather, it is my opinion that the departures collectively contributed to cause her death.

20.

I reserve the right to supplement these opinions if additional records, testimony, or materials become available.

FURTHER AFFIANT SAYETH NOT.

Zachary K. Blumkin, Psy.D., ABPP

Sworn to and subscribed before me
this 31st day of August, 2026.

Notary Public

My commission expires:
11/18/2029

Mevindra H Sawh
Notary Public - State of New York
No. 01SA0043921
Qualified in Bronx County
My Commission Expires 11/18/2029

MEVINDRA H SAWH
NOTARY PUBLIC
# 01SA0043921
MY COMMISSION EXPIRES 11/18/2029
STATE OF NEW YORK

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

**ADRIAN JANIT PSYCHOLOGICAL SERVICES, LLC**

**C/O REGISTERED AGENT DONSBACH LEWIS LLC**

**504 BLACKBURN DRIVE, MARTINEZ, GA 30907**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026**, 20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

**ADRIAN JANIT, PH.D.**

**211 PLEASANT HOME ROAD, SUITE G1**

**AUGUSTA, GA 30907**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** ________ **day of** 3rd day of September, 2026, **20**____.

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**
**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

**AVERY SPRIGGS, M.A., LCMHC, LPC**
**336 CLARINE DRIVE**
**GOOSE CREEK, SC 29445**

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026**, 20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** Amy Jay
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

EFILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

**BYTEDANCE LTD.**

**C/O Registered Agent/Maples Corporate Services Limited**
**~~P.O. Box 309, Ugland House, South Church~~ Street,**
**George Town, KY1-1104, Cayman Islands**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026**, 20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** Amy Jay
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

EFILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION
NUMBER: 26-C-09759-S5

VS.

ByteDance, Inc.

c/o Registered Agent/Corporation Service Company

2 Sun Court, Suite 400, Peachtree Corners, GA, 30092

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026**, 20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature] 
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

EFILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

Healing at Water's Edge, LLC

c/o Registered Agent, Northwest Registered Agent Service

8735 Dunwoody Place, Suite N, Atlanta, GA 30350

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ______________ day of** 3rd day of September, 2026, **20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature] ______________________
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**
**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

Instagram, LLC
c/o Registered Agent, Corporation Service Company
251 Little Falls Drive, Wilmington, DE 19808

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026 **, 20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** Amy Gay
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

EFILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

Meta Platforms, Inc.

c/o Registered Agent, Corporation Service Company

2 Sun Court, Suite 400, Peachtree corners, GA 30092

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** ________ **day of** 3rd day of September, 2026, **20**____.

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

TikTok Ltd.

c/o Registered Agent, Corporation Service Company

2 Sun Court, Suite 400, Peachtree Corners, GA 30092

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** ________________ **day of** 3rd day of September, 2026, **20**____.

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION
NUMBER: 26-C-09759-S5

VS.

Tikok Pte. Ltd.

1 Raffles Quay, #26-10, South Tower,

Singapore 048583

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** ________ **day of** 3rd day of September, 2026, **20**____.

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

TikTok USDS Joint Venture, LLC

c/o Registered Agent, Corporation Service Company

251 Little Falls Drive, Wilmington, DE 19808

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026, **20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

TikTok, Inc.

c/o Registered Agent, Corporation Service Company

2 Sun Court, Suite 400, Peachtree Corners, GA 30092

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This** ________ **day of** 3rd day of September, 2026, **20**____.

**Tiana P. Garner**
**Clerk of State Court**

**By** ________________
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - AJ
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/2/2026 7:55 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

**CECIL L. ROSARIO**

**RAFAEL A. ROSARIO**

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

TikTok, LLC

c/o Registered Agent, Corporation Service Company

251 Little Falls Drive, Wilmington, DE 19808

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 3rd day of September, 2026, **20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/3/2026 3:59 PM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,<br><br>Defendants. | Civil Action File<br>No. 26-C-09759-S5<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION FOR APPOINTMENT OF RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC TO SERVE PROCESS**

COME NOW Plaintiffs and files this Motion and moves the Court for an Order authorizing RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC an individual and company authorized to serve process in the state of South Carolina, to serve a copy of the Complaint and Summons in this case upon Defendant Avery Spriggs on the grounds that this Defendant is out-of-state. Defendant Avery Spriggs can be served at her residence at 336 Clarine Drive, Goose

Creek, SC 29445 or at her place of employment at 3030 Ashley Town Center Drive, Suite 203B, Charleston, SC 29414. A Proposed Order is attached hereto.

Respectfully submitted this 3rd day of September, 2026.

**PENN LAW LLC**

/s/ Kevin M. Ketner
DARREN W. PENN
Georgia Bar No. 571322
KEVIN M. KETNER
Georgia Bar No. 418233
ETHAN M. PRINCENTHAL
Georgia Bar No. 091366

4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655
darren@pennlawgroup.com
kevin@pennlawgroup.com
ethan@pennlawgroup.com

***Attorneys for Plaintiffs***

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,<br><br>Defendants. | Civil Action File<br>No. 26-C-09759-S5<br><br>**JURY TRIAL DEMANDED** |

**AFFIDAVIT OF KEVIN M. KETNER**

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, came Kevin M. Ketner, who, after first being duly sworn, states as follows:

1.

I, Kevin M. Ketner, being over 18 years of age, am duly licensed to practice law in the state of Georgia.

2.

I am an attorney for Plaintiffs of record in the above styled action.

3.

The Complaint and Summons in this matter have been filed with the Office of the Clerk of Gwinnett County State Court.

4.

Defendant Avery Spriggs can be served at her residence at 336 Clarine Drive, Goose Creek, SC 29445 or at her place of employment at 3030 Ashley Town Center Drive, Suite 203B, Charleston, SC 29414.

5.

I believe that RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC will be able to effectuate service upon Defendant Avery Spriggs in a timely manner, as prescribed by Georgia law.

Kevin M. Ketner, Esq.

Sworn to and subscribed before me
This 3rd day of September, 2026.

Notary Public

My commission expires: 6/24/2028

ROY MCCART
My Commission Expires
NOTARY PUBLIC
06-24-2028
NEWTON COUNTY, GEORGIA

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC is appointed and authorized to effect service of process upon Defendants Avery Spriggs.

This ______ day of ________________, 2026.

______________________________________

Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/3/2026 3:07 PM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**PLAINTIFF'S MOTION FOR APPOINTMENT OF CIVIL ACTION GROUP, LTD. d/b/a APS INTERNATIONAL, LTD. TO SERVE PROCESS**

COME NOW Plaintiffs and files this Motion and moves the Court for an Order authorizing **Civil Action Group, Ltd. d/b/a APS International, Ltd.**, a company organized in the United States, to serve a copy of the Complaint and Summons in this case upon Defendants, TIKTOK PTE. LTD. and BYTEDANCE LTD., on the grounds that these Defendants are foreign corporations, organized in Singapore and the Cayman Islands, a British Overseas Territory. Defendant, TIKTOK PTE. LTD.'s main office is located at 1 Raffles Quay, #26-10, South Tower,

Singapore 048583; Defendant, BYTEDANCE LTD.'s main office is located at Ugland House, South Church Street, Georgetown, Grand Cayman KY1-1104. A Proposed Order is attached hereto.

Respectfully submitted this 3rd day of September, 2026.

**PENN LAW LLC**

*/s/ Kevin M. Ketner*
DARREN W. PENN
Georgia Bar No. 571322
KEVIN M. KETNER
Georgia Bar No. 418233
ETHAN M. PRINCENTHAL
Georgia Bar No. 091366

4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655
darren@pennlawgroup.com
kevin@pennlawgroup.com
ethan@pennlawgroup.com

***Attorneys for Plaintiffs***

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File No.
26-C-09759-S5

**JURY TRIAL DEMANDED**

**AFFIDAVIT OF KEVIN M. KETNER**

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, came Kevin M. Ketner, who, after first being duly sworn, states as follows:

1.

I, Kevin M. Ketner, being over 18 years of age, am duly licensed to practice law in the state of Georgia.

2.

I am an attorney for Plaintiffs of record in the above styled action.

3.

The Complaint and Summons in this matter have been filed with the Office of the Clerk of Gwinnett County State Court.

4.

Defendant, TIKTOK PTE. LTD.'s main office is located at 1 Raffles Quay, #26-10, South Tower, Singapore 048583.

5.

Defendant, BYTEDANCE LTD.'s main office is located at Ugland House, South Church Street, Georgetown, Grand Cayman KY1-1104.

6.

To ensure that due diligence is exercised in attempting to effectuate proper service of the Summons and Complaint upon Defendant, TIKTOK PTE. LTD. BYTEDANCE LTD. in accordance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, (20 U.S.T. 361; 658 U.N.T.S. 163), Plaintiffs wish to retain Civil Action Group, Ltd. d/b/a APS International, Ltd. to serve process upon Defendant TIKTOK PTE. LTD. in Singapore and Defendant BYTEDANCE LTD. in the Cayman Islands, an Overseas British Territory.

9.

I believe that Civil Action Group, Ltd. d/b/a APS International, Ltd. will be able to effectuate service upon Defendants, TIKTOK PTE. LTD. BYTEDANCE LTD., in a timely manner, as prescribed by Georgia law.

Kevin M. Ketner, Esq.

Sworn to and subscribed before me
This 3rd day of September, 2026.

Notary Public

My commission expires: 6/24/2028

ROY MCCART
My Commission Expires
NOTARY PUBLIC
06-24-2028
NEWTON COUNTY, GEORGIA

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of Civil Action Group, Ltd. d/b/a APS International, Ltd. to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that Civil Action Group, Ltd. d/b/a APS International, Ltd., including its designated agents, is appointed and authorized to effect service of process upon Defendant TIKTOK PTE. LTD. in Singapore and Defendant BYTEDANCE LTD. in the Cayman Islands, an Overseas British

Territory. Service shall be effected according to any internationally agreed means, the laws of the foreign country and/or state, or as directed by the foreign authority or the originating court if not otherwise prohibited by international agreement or the laws of the foreign country and/or state, and in a manner reasonably calculated to give notice.

This ______ day of ________________, 2026.

______________________________________

Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/3/2026 3:07 PM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**PLAINTIFF'S MOTION FOR APPOINTMENT OF GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC TO SERVE PROCESS**

COME NOW Plaintiffs and files this Motion and moves the Court for an Order authorizing GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC an individual and company authorized to serve process in the state of Delaware, to serve a copy of the Complaint and Summons in this case upon Defendants, TIKTOK, LLC, TIKTOK USDS JOINT VENTURE, LLC and INSTAGRAM, LLC on the grounds that these Defendants are out-of-state corporations, organized in Delaware. TIKTOK, LLC, TIKTOK USDS JOINT

VENTURE, LLC and INSTAGRAM, LLC can be served via their Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, DE 19808. A Proposed Order is attached hereto.

Respectfully submitted this 3rd day of September, 2026.

**PENN LAW LLC**

*/s/ Kevin M. Ketner*
DARREN W. PENN
Georgia Bar No. 571322
KEVIN M. KETNER
Georgia Bar No. 418233
ETHAN M. PRINCENTHAL
Georgia Bar No. 091366

4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655
darren@pennlawgroup.com
kevin@pennlawgroup.com
ethan@pennlawgroup.com

***Attorneys for Plaintiffs***

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,<br><br>Defendants. | Civil Action File<br>No. 26-C-09759-S5<br><br>**JURY TRIAL DEMANDED** |

**AFFIDAVIT OF KEVIN M. KETNER**

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, came Kevin M. Ketner, who, after first being duly sworn, states as follows:

1.

I, Kevin M. Ketner, being over 18 years of age, am duly licensed to practice law in the state of Georgia.

2.

I am an attorney for Plaintiffs of record in the above styled action.

3.

The Complaint and Summons in this matter have been filed with the Office of the Clerk of Gwinnett County State Court.

4.

TIKTOK, LLC, TIKTOK USDS JOINT VENTURE, LLC and INSTAGRAM, LLC can be served via their Registered Agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, DE 19808.

5.

I believe that GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC will be able to effectuate service upon Defendants, TIKTOK, LLC, TIKTOK USDS JOINT VENTURE, LLC and INSTAGRAM, LLC in a timely manner, as prescribed by Georgia law.

______________________________
Kevin M. Ketner, Esq.

Sworn to and subscribed before me
This 3rd day of September, 2026.

______________________________
Notary Public

My commission expires: 6/24/2028

ROY MCCART
My Commission Expires
NOTARY PUBLIC
06-24-2028
NEWTON COUNTY, GEORGIA

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC is appointed and authorized to effect

service of process upon Defendants, TIKTOK, LLC, TIKTOK USDS JOINT VENTURE, LLC and INSTAGRAM, LLC.

This ______ day of _________________, 2026.

_______________________________________
Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/4/2026 9:19 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that GILBERT DEL VALLE OF BRANDYWINE PROCESS SERVERS, LLC is appointed and authorized to effect

service of process upon Defendants, TIKTOK, LLC, TIKTOK USDS JOINT VENTURE, LLC and INSTAGRAM, LLC.

This 4th day of September, 2026.

Erica K. Dove

Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/4/2026 9:19 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that RICHARD KRANTZ OF ALL AREA PROCESS SERVICES, LLC is appointed and authorized to effect service of process upon Defendants Avery Spriggs.

This 4th day of September, 2026.

Erica K. Dove

Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/4/2026 9:19 AM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-C-09759-S5

**JURY TRIAL DEMANDED**

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of Civil Action Group, Ltd. d/b/a APS International, Ltd. to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that Civil Action Group, Ltd. d/b/a APS International, Ltd., including its designated agents, is appointed and authorized to effect service of process upon Defendant TIKTOK PTE. LTD. in Singapore and Defendant BYTEDANCE LTD. in the Cayman Islands, an Overseas British

Territory. Service shall be effected according to any internationally agreed means, the laws of the foreign country and/or state, or as directed by the foreign authority or the originating court if not otherwise prohibited by international agreement or the laws of the foreign country and/or state, and in a manner reasonably calculated to give notice.

This 4th day of September, 2026.

Erica K. Dove

Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/9/2026 9:12 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

## AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 4, 2026**, at approximately **2:01 P.M., ByteDance, Inc.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon Alicia Smith, an authorized agent to accept service for Corporation Service Company, the reported Registered Agent for ByteDance, Inc. Service was perfected at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

Further affiant sayeth not.

Sworn to and subscribed before me.
this 8th day of September 2026.

NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11:38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/8/2026 2:00 PM
TIANA P. GARNER, CLERK

# Affidavit of Process Server

IN THE STATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA

CECIL L. ROSARIO AND RAFAEL A. ROSARIO, INDIVIDUALLY AS SURVIVING PARENTS OF FABIANA A. ROSARIO ECHEVARRIA, DECEASED ET AL VS TIKTOK INC., ET AL 26-C-09759-S5

PLAINTIFF/PETITIONER DEFENDANT/RESPONDENT CASE NUMBER

I GILBERT DEL VALLE being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service. RECEIVED 09/04/2026

**Service:** I served INSTAGRAM, LLC
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT FOR WRONGFUL DEATH AND DEMAND FOR JURY TRIAL; ORDER TO APPOINT SPECIAL PROCESS SERVICE; EXHIBITS A-B

by leaving with CORPORATION SERVICE COMPANY, AS AGENT, ACCEPTED BY DENISE DOE (MANAGING AGENT EMPLOYED AT REGISTERED AGENT) At

☒ Business 251 LITTLE FALLS DRIVE WILMINGTON, DE 19808
ADDRESS CITY / STATE

On 09/04/2026 AT 12:15 PM
DATE TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on ______
DATE

from ______
CITY STATE ZIP

**Manner of Service:**
☒ CORPORATE
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of ______ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address ☐ Moved, Left no Forwarding ☐ Service Canceled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other ______

**Service Attempts:** Service was attempted on: (1) ______ DATE TIME (2) ______ DATE TIME

(3) ______ DATE TIME (4) ______ DATE TIME (5) ______ DATE TIME

Age 55 Sex F Race WHT Height 5'5 Weight 140 HAIR BRWN

GILBERT DEL VALLE

SUBSCRIBED AND SWORN to before me this 4TH day of SEPTEMBER, 2026.

SIGNATURE OF NOTARY PUBLIC

ALICIA MARIE DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires November 6 2027

NOTARY PUBLIC for the state of DELAWARE

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/9/2026 9:12 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

## AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 4, 2026**, at approximately **2:01 P.M., Meta Platforms, Inc.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon Alicia Smith, an authorized agent to accept service for Corporation Service Company, the reported Registered Agent for Meta Platforms. Inc. Service was perfected at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

Further affiant sayeth not.

Sworn to and subscribed before me.
this 8th day of September 2026.

LaDonna S Gauntt

NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11:38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

**ORDER OF APPOINTMENT**

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/9/2026 9:12 AM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

---

**AFFIDAVIT OF SERVICE**

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 4, 2026**, at approximately **2:01 P.M., TikTok, Inc.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon Alicia Smith, an authorized agent to accept service for Corporation Service Company, the reported Registered Agent for TikTok, Inc. Service was perfected at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

Further affiant sayeth not.

Sworn to and subscribed before me.
this 8th day of September 2026.

LaDonna S Gauntt

NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11: 38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/9/2026 9:12 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

**AFFIDAVIT OF SERVICE**

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 4, 2026**, at approximately **2:01 P.M., TikTok Ltd.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon Alicia Smith, an authorized agent to accept service for Corporation Service Company, the reported Registered Agent for TikTok, Ltd. Service was perfected at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

Further affiant sayeth not.

Sworn to and subscribed before me.
this 8th day of September 2026.

LaDonna S Gauntt

NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11:38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - JG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/8/2026 2:00 PM
TIANA P. GARNER, CLERK

# Affidavit of Process Server

IN THE STATE COURT OF GWINNETT COUNTY, STATE OF GEORGIA

| PLAINTIFF/PETITIONER | | DEFENDANT/RESPONDENT | CASE NUMBER |
|---|---|---|---|
| CECIL L. ROSARIO AND RAFAEL A. ROSARIO, INDIVIDUALLY AS SURVIVING PARENTS OF FABIANA A. ROSARIO ECHEVARRIA, DECEASED ET AL | VS | TIKTOK INC., ET AL | 26-C-09759-S5 |

I GILBERT DEL VALLE being first duly sworn, depose and say: that I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to perform said service. RECEIVED 09/04/2026

**Service:** I served TIKTOK USDS JOINT VENTURE, LLC
NAME OF PERSON / ENTITY BEING SERVED

with (list documents) SUMMONS; COMPLAINT FOR WRONGFUL DEATH AND DEMAND FOR JURY TRIAL; ORDER TO APPOINT SPECIAL PROCESS SERVICE; EXHIBITS A-B

by leaving with CORPORATION SERVICE COMPANY, AS AGENT, ACCEPTED BY DENISE DOE (MANAGING AGENT EMPLOYED AT REGISTERED AGENT) At

☒ Business 251 LITTLE FALLS DRIVE WILMINGTON, DE 19808
ADDRESS CITY / STATE

On 09/04/2026 AT 12:15 PM
DATE TIME

Thereafter copies of the documents were mailed by prepaid, first class mail on ____________
DATE

from ____________
CITY STATE ZIP

**Manner of Service:**
☒ CORPORATE
☐ **Personal:** By personally delivering copies to the person being served.
☐ **Substituted at Residence:** By leaving copies at the dwelling house or usual place of abode of the person being served with a member of the household over the age of ________ and explaining the general nature of the papers.
☐ **Substituted at Business:** By leaving, during office hours, copies at the office of the person/entity being served with the person apparently in charge thereof.
☐ **Posting:** By posting copies in a conspicuous manner to the front door of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address (es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address ☐ Moved, Left no Forwarding ☐ Service Canceled by Litigant ☐ Unable to Serve in Timely Fashion
☐ Address Does Not Exist ☐ Other ____________

**Service Attempts:** Service was attempted on: (1) ________ DATE TIME (2) ________ DATE TIME

(3) ________ DATE TIME (4) ________ DATE TIME (5) ________ DATE TIME

Age 55 Sex F Race WHT Height 5'5 Weight 140 HAIR BRWN

GILBERT DEL VALLE

SUBSCRIBED AND SWORN to before me this 4TH day of SEPTEMBER, 2026.

SIGNATURE OF NOTARY PUBLIC

ALICIA MARIE DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires November 6 2027

NOTARY PUBLIC for the state of DELAWARE

E-FILED IN OFFICE - KMG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/11/2026 9:42 AM
TIANA P. GARNER, CLERK

## AFFIDAVIT OF SERVICE

| Case: 26-C-09759-S5 | Court: In the State Court of Gwinnett County, State of Georgia | County: Gwinnett, GA | Job: 16798784 |
|---|---|---|---|
| **Plaintiff / Petitioner:** CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA | | **Defendant / Respondent:** TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10 | |
| **Received by:** All Area Process Services, LLC | | **For:** Darren W. Penn, Esq. - Penn Law, LLC | |
| **To be served upon:** **Avery Spriggs a/k/a Amanda Michele Spriggs** | | | |

I, Richard N. Krantz, Jr., being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** **Avery Spriggs a/k/a Amanda Michele Spriggs, Healing at Waters Edge, LLC: 3030 Ashley Town Center Drive Ste 203-B, Charleston, SC 29414**

**Manner of Service:** Personal/Individual, Sep 8, 2026, 4:48 pm EDT

**Documents:** Summons (Received Sep 4, 2026 at 3:16pm EDT), Complaint for Wrongful Death and Demand for Jury Trial (Received Sep 4, 2026 at 3:16pm EDT)

**Additional Comments:**
1) Successful Attempt: Sep 8, 2026, 4:48 pm EDT at Healing at Waters Edge, LLC: 3030 Ashley Town Center Drive Ste 203-B, Charleston, SC 29414 received by Avery Spriggs a/k/a Amanda Michele Spriggs. Age: 35; Ethnicity: Caucasian-Chinese; Gender: Other; Weight: 205; Height: 5'2"; Hair: Black; Eyes: Brown - Server met with a Caucasian-Chinese Binary individual who identified themself as the intended recipient, Avery Spriggs a/k/a Amanda Michele Spriggs. The documents were served/hand-delivered to the intended recipient and personal service was effectuated at the time noted without incident.

9/9/2026

Richard N. Krantz, Jr. Date

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Notary Public

09/09/2026 07/22/2032

Date Commission Expires

J. A. FARY
My Commission Expires
NOTARY
PUBLIC
July 22, 2032
SOUTH CAROLINA

All Area Process Services, LLC • 520 Folly Road Suite 25, PMB 250, Charleston, SC 29412

Call: 843-864-6699 • Email: allareaprocessservices@gmail.com

E-FILED IN OFFICE - KMG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/10/2026 4:27 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

---

**AFFIDAVIT OF SERVICE**

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 4, 2026**, at approximately **2:01 P.M., Healing at Waters Edge, LLC.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon Matt Porter, an authorized agent to accept service for Northwest Registered Agent Services, the reported Registered Agent for Healing at Waters Edge, LLC. Service was perfected at 8735 Dunwoody Place, Suite N, Atlanta, Georgia 30350.

Further affiant sayeth not.

Sworn to and subscribed before me.
this 9th day of September 2026.

NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11:38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

**ORDER OF APPOINTMENT**

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - JT
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/9/2026 10:03 AM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

CECIL L. ROSARIO

RAFAEL A. ROSARIO

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

TIKTOK PTE. LTD.

1 RAFFLES QUAY, #26-10, SOUTH TOWER

SINGAPORE 048583

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW, LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of** 9th day of September, 2026 **, 20____.**

**Tiana P. Garner**
**Clerk of State Court**

**By** Julie A. Thomas
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - KMG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/11/2026 9:32 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

**AFFIDAVIT OF SERVICE**

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 10, 2026**, at approximately **9:55 A.M., Adrian Janit Psychological Services, LLC.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon **Scott Lewis**, an authorized person to accept service for **Donsbach Lewis LLC**, the reported Registered Agent for Adrian Janit Psychological Services, LLC. Service was perfected at **504 Blackburn Drive, Martinez, Georgia 30907.**

Further affiant sayeth not.

Sworn to and subscribed before me.
this 10th day of September 2026.

LaDonna S Gauntt
NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11: 38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - KMG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/11/2026 9:32 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

**CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,**

Plaintiff,

v.

**TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,**

Defendant's.

**Civil Action No.: 26-C-09759-S5**

## AFFIDAVIT OF SERVICE

Personally, appeared before the undersigned, an officer duly authorizes by law to administer oaths, James Basham a United States Citizen and over the age of 18 years after being duly sworn, deposes and states that the statements set forth below are true and correct to the best of his knowledge and belief:

1.

On **September 10, 2026**, at approximately **9:45 A.M., Adrian Janit, PH.D.,** was served with the following:

- **Summons**
- **Complaint for Wrongful Death and Demand for Jury Trial**
- **Exhibit A- Affidavit of Jessica Lavender, MBA, M.S., LPC-MHSP-S, Exhibit B-Affidavit of Zachary K. Blumkin, PSY.D., ABPP**

Service was perfected upon Adrian Janit, PH.D., at his place of employment, Georgia Psychological Services, LLC, located at 211 Pleasant Home Road, Suite G1, August, Georgia 30907.

Further affiant sayeth not.

Sworn to and subscribed before me.
this 10th day of September 2026.

LaDonna S Gauntt
NOTARY PUBLIC
My commission expires on 11/21/29

LADONNA S GAUNTT NOTARY PUBLIC WALTON COUNTY, GEORGIA

Affiant, James Basham
Dial Services, Inc.
PO Box 3315
Loganville, Georgia 30052
CPS # 307

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA
2025 NOV 24 AM 11: 38
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number: 25 C 12827-4

## ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2027.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this 24th day of November, 20 25.

Ronda S. Colvin (Nov 24, 2025 09:14:48 EST)

Presiding Judge
Gwinnett County State Court

Applicant:

Name James S. Basham

Address 3520 Stoney Creek Way

Loganville, GA 30052

404-886-4499

E-FILED IN OFFICE - AK
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/11/2026 11:11 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,

Plaintiffs,

v.

TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,

Defendants.

Civil Action File
No. 26-S-09759-S5

**JURY TRIAL DEMANDED**

**PLAINTIFF'S MOTION FOR APPOINTMENT OF CIVIL ACTION GROUP, LTD. d/b/a APS INTERNATIONAL, LTD. TO SERVE PROCESS**

COME NOW Plaintiffs and files this Motion and moves the Court for an Order authorizing **Civil Action Group, Ltd. d/b/a APS International, Ltd.**, a company organized in the United States, to serve a copy of the Complaint and Summons in this case upon Defendants, TIKTOK LTD. on the grounds that this Defendant is a foreign corporation, organized in the Cayman Islands, a British Overseas Territory. Defendant, TIKTOK LTD.'s main office is located at Grand

Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman KY1-1205. A Proposed Order is attached hereto.

Respectfully submitted this 11th day of September, 2026.

**PENN LAW LLC**

*<u>/s/ Kevin M. Ketner</u>*
DARREN W. PENN
Georgia Bar No. 571322
KEVIN M. KETNER
Georgia Bar No. 418233
ETHAN M. PRINCENTHAL
Georgia Bar No. 091366

4200 Northside Parkway, N.W.
Building One, Suite 100
Atlanta, Georgia 30327
Phone/Fax: (404) 961-7655
darren@pennlawgroup.com
kevin@pennlawgroup.com
ethan@pennlawgroup.com

***Attorneys for Plaintiffs***

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,<br><br>Defendants. | Civil Action File<br>No. 26-S-09759-S5<br><br>**JURY TRIAL DEMANDED** |

**AFFIDAVIT OF KEVIN M. KETNER**

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, came Kevin M. Ketner, who, after first being duly sworn, states as follows:

1.

I, Kevin M. Ketner, being over 18 years of age, am duly licensed to practice law in the state of Georgia.

2.

I am an attorney for Plaintiffs of record in the above styled action.

3.

The Complaint and Summons in this matter have been filed with the Office of the Clerk of Gwinnett County State Court.

4.

Defendant, TIKTOK LTD.'s main office is located at Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman KY1-1205.

5.

To ensure that due diligence is exercised in attempting to effectuate proper service of the Summons and Complaint upon Defendant, TIKTOK LTD. in accordance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, (20 U.S.T. 361; 658 U.N.T.S. 163), Plaintiffs wish to retain Civil Action Group, Ltd. d/b/a APS International, Ltd. to serve process upon Defendant TIKTOK LTD. in the Cayman Islands, an Overseas British Territory.

6.

I believe that Civil Action Group, Ltd. d/b/a APS International, Ltd. will be able to effectuate service upon Defendant TIKTOK LTD. in a timely manner, as prescribed by Georgia law.

Kevin M. Ketner, Esq.

Sworn to and subscribed before me
This 11th day of September, 2026.

Notary Public

My commission expires: 6/24/2028

ROY MCCART
My Commission Expires
NOTARY PUBLIC
06-24-2028
NEWTON COUNTY, GEORGIA

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,<br><br>Defendants. | Civil Action File<br>No. 26-S-09759-S5<br><br>**JURY TRIAL DEMANDED** |

**ORDER TO APPOINT SPECIAL PROCESS SERVICE**

Plaintiffs' Motion for Appointment of Civil Action Group, Ltd. d/b/a APS International, Ltd. to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that Civil Action Group, Ltd. d/b/a APS International, Ltd., including its designated agents, is appointed and authorized to effect service of process upon Defendant TIKTOK LTD. in the Cayman Islands, an Overseas British Territory. Service shall be effected according to any

internationally agreed means, the laws of the foreign country and/or state, or as directed by the foreign authority or the originating court if not otherwise prohibited by international agreement or the laws of the foreign country and/or state, and in a manner reasonably calculated to give notice.

This ______ day of ________________, 2026.

______________________________________
Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia

E-FILED IN OFFICE - KMG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/11/2026 1:29 PM
TIANA P. GARNER, CLERK

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

CECIL L. ROSARIO

RAFAEL A. ROSARIO

PLAINTIFF

CIVIL ACTION NUMBER: 26-C-09759-S5

VS.

TIKTOK, LTD.

GRAND PAVILION, HIBISCUS WAY
802 WEST BAY ROAD, GRAND CAYMAN,
CAYMAN ISLANDS KY1-1205

DEFENDANT

# SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

**You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:**

DARREN W. PENN - PENN LAW LLC
4200 NORTHSIDE PARKWAY, NW
BUILDING ONE, SUITE 100
ATLANTA, GA 30327

**an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.**

**This ________ day of ________________, 20____.**

11th day of September, 2026

**Tiana P. Garner**
**Clerk of State Court**

**By** [signature]
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

E-FILED IN OFFICE - KMG
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
26-C-09759-S5
9/15/2026 10:39 AM
TIANA P. GARNER, CLERK

**IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| CECIL L. ROSARIO and RAFAEL A. ROSARIO, individually as the surviving parents of FABIANA A. ROSARIO ECHEVARRIA, deceased, and CECIL L. ROSARIO, as Administrator of the Estate of FABIANA A. ROSARIO ECHEVARRIA,<br><br>Plaintiffs,<br><br>v.<br><br>TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; TIKTOK LTD.; BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK USDS JOINT VENTURE LLC; META PLATFORMS, INC.; INSTAGRAM, LLC; AVERY SPRIGGS; HEALING AT WATER'S EDGE, LLC; ADRIAN JANIT; ADRIAN JANIT PSYCHOLOGICAL SERVICES, L.L.C.; JOHN DOES 1–10; and ABC CORPORATIONS 1–10,<br><br>Defendants. | Civil Action File<br>No. 26-S-09759-S5<br><br>**JURY TRIAL DEMANDED** |

**<u>ORDER TO APPOINT SPECIAL PROCESS SERVICE</u>**

Plaintiffs' Motion for Appointment of Civil Action Group, Ltd. d/b/a APS International, Ltd. to Serve Process having been read and considered, and it appearing to the Court that sufficient grounds exist for the granting thereof,

**IT IS HEREBY ORDERED** that Civil Action Group, Ltd. d/b/a APS International, Ltd., including its designated agents, is appointed and authorized to effect service of process upon Defendant TIKTOK LTD. in the Cayman Islands, an Overseas British Territory. Service shall be effected according to any

internationally agreed means, the laws of the foreign country and/or state, or as directed by the foreign authority or the originating court if not otherwise prohibited by international agreement or the laws of the foreign country and/or state, and in a manner reasonably calculated to give notice.

This 15th day of September, 2026.

Erica K. Dove

Honorable Erica K. Dove
Judge, State Court of Gwinnett County, Georgia